TROLIO, APPELLEE, *v.* McLENDON ET AL., APPELLANTS.

[Cite as Trolio v. McLendon, 4 Ohio App. 2d 30.]

(No. 4496—Decided October 13, 1965.)

*Messrs. Rickert & Fine*, for appellee.
*Messrs. Stephens, Stephens & Wilkes*, for appellants.

JONES, J. Motion for summary judgment was filed pursuant to the Summary Judgment Act. A trial judge of the Mahoning County Court of Common Pleas sustained plaintiff's motion. It is from that final order that the appeal now pends before our court. The case was well argued upon an excellent record and briefs.

Originally, the plaintiff herein filed a petition in the Common Pleas Court of Mahoning County naming Joe McLendon and Henry Higgins as defendants. Henry Higgins was the named insured under a liability policy on his automobile issued by Allstate Insurance Company.

Joe McLendon operated a garage for the repairing of cars and was "road-testing" Higgins' auto after having made repairs on it when he was involved in an auto accident with the plaintiff, Doris Trolio. Doris Trolio filed suit for her injur-

ies and damages resulting from such accident, in which she named Joe McLendon, the garageman, and Henry Higgins, the auto owner, as joint defendants. At the time of the accident, McLendon was alone, and Higgins apparently knew nothing about the accident until being advised of it later.

Allstate Insurance Company agreed to defend its named insured, Henry Higgins, the auto owner, but refused to defend Joe McLendon, the garageman, because of an exclusion in its policy that is set out hereafter.

Doris Trolio then dismissed the petition as against Henry Higgins and filed a second amended petition against Joe McLendon, as sole defendant. Allstate refused to defend Joe McLendon on this second amended petition under the exclusion in its policy. A trial was held without the intervention of a jury. The trial court rendered judgment in favor of plaintiff, Doris Trolio, against the defendant, Joe McLendon, in the total sum of $7,900.00.

Thereafter, the plaintiff, Doris Trolio, filed a supplemental petition pursuant to law based upon the judgment naming as defendants, Joe McLendon and Allstate Insurance Company. No answer was filed by Joe McLendon to the supplemental petition. However, Allstate Insurance Company filed its separate answer. Among other averments, the answer states that Joe McLendon was among a group of persons excluded from the coverage of Henry Higgins' policy because he was operating an automobile repair garage at the time of the accident.

The issues raised by the supplemental petition of Doris Trolio and separate answer of Allstate Insurance Company were heard by the court without a jury. The facts were not in dispute and were stipulated by counsel, as were the exhibits and entire record.

The stipulation of facts indicates that Henry Higgins, Allstate's named insured and the auto owner, took his auto to Joe McLendon's garage for repairs. His auto remained there and, while Joe McLendon was "road-testing" Higgins' car prior to redelivering the car to Higgins, McLendon and Doris Trolio had a collision.

The record also discloses that the policy of insurance in question issued by Allstate in favor of Higgins had the following exclusion:

"Exclusion—what this Part of the policy does not cover.
"This Part 1 does not apply to:
" * * *

"2. An owned automobile while used in an automobile business, but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which such named insured or resident is a partner, or any partner, agent or employee of such resident or partnership; * * *."

"Definitions of words under this Part.
"2. Automobile Covered.
"(a) 'owned automobile' means the vehicle described on the Supplement Page, and, as defined herein, any replacement automobile, any additional automobile, any temporary substitute automobile, and any trailer owned by the named insured; * * *."

"3. Miscellaneous.
"(c) 'automobile business' means the business of selling, repairing, servicing, storing or parking of automobiles; * * *."

It is therefore clear and undisputed from the facts that McLendon, while engaged in the repair and/or servicing of Higgins' car, had the accident for which judgment was subsequently rendered against defendant Allstate Insurance Company on the supplemental petition of plaintiff, Doris Trolio, herein.

The trial court, in rendering its decision in favor of plaintiff and against Allstate Insurance Company on the supplemental petition, relied on Section 4509.51, Revised Code, and *Firestone Tire & Rubber Co.* v. *State Farm Mutual Automobile Ins. Co.*, 119 Ohio App. 116. Section 4509.51, Revised Code, provides:

"Every owner's policy of liability insurance:
" * * *

"(B) Shall insure the person named therein *and any other person, as insured, using any such motor vehicles with the express or implied permission of the insured*, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such vehicles * * *." (Emphasis ours.)

On page 3 of Allstate's policy of insurance the following language is used:

"Compliance with financial responsibility laws.

"When this policy is certified as proof of financial responsibility for the future under the provisions of any Motor Vehicle Financial Responsibility Law, such insurance as is afforded by this Part 1 shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law, but not in excess of the policy limits of liability * * *.'' (Part 1 is the liability coverage.)

The record does not disclose that the policy issued by Allstate Insurance Company in this case was ever "certified" as provided in Section 4509.46, Revised Code.

The Ohio Supreme Court, in *Moyer, Admx.,* v. *Aron*, 175 Ohio St. 490, held, in the second paragraph of the syllabus:

"A person is not an insured under an automobile insurance policy unless such person is defined as an insured by the terms of the policy, except where such policy has been 'certified' under the provisions of Section 4509.46, Revised Code, and thereby the definition of who is an 'insured' under the policy has been modified to conform to the provisions of the statute. (Section 4509.51, Revised Code.)''

The *Firestone Tire & Rubber Company case* dealt with a situation almost identical to the instant case. However, the Court of Appeals in deciding the *Firestone case* used and applied the law of California and found that under Colifornia law the exclusion was void as against public policy, and, as such, the contract of insurance was interpreted as though the exclusion was not in the policy.

The California Vehicle Code (1935), Section 402 (now California Vehicle Code [1959], Section 17150), created vicarious liability on the owner of a car being driven by anyone with the owner's permission, and for this reason the exclusion was held to be against public policy. Section 402 (1937 amendment) of the Vehicle Code of California provided:

"(a) Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages.''

Ohio does not have a statute comparable to Section 402 of the California Vehicle Code, and there is no vicarious liability on the owner of a car, while such car is being operated by anyone else, merely because one is the title owner of the car. This is so in the absence of an agency. The plaintiff does not claim that McLendon was acting as agent for Higgins at the time of the accident, and there is no indication of agency in the record.

Since vicarious liability does not attach to the owner under Ohio law, the parties may contract with respect to excluding garage repairmen and others, if they so desire. To do so would not be against public policy in Ohio.

The policy of insurance was a contract between Higgins and Allstate, and the intention of the parties is to be determined from the contract.

Applying the exclusions herein quoted from the contract or policy of insurance to the facts in this case, we find that it was not intended to extend coverage to McLendon. McLendon was not an insured under Allstate's policy, and the plaintiff was not entitled to recover on her supplemental petition against defendant Allstate Insurance Company.

Plaintiff in her brief, and her counsel in argument, questioned the meaning of the word "used" as contained in the Exclusion.

"This Part 1, does not apply to:

"2. an automobile while *used* in an automobile business * * *." (Emphasis added.)

It is common knowledge that the usual use to which an automobile will be put is its being driven; by the term "used" the parties to the contract of insurance intended to exclude coverage while the automobile was being used or driven by anyone in the excluded class of persons; "used" means used in any way, in the absence of limiting words or other definitions.

In 7 Appleman, Insurance Law and Practice, 342, 343, the following appears:

"* * * Such clauses are held reasonable and valid, and have been repeatedly enforced by the courts, which have considered that the hazard in such a business is undoubtedly greater and have permitted the insurer to limit the risk which it desires to assume. * * *"

· · The Supreme Court of Ohio in the *Moyer case* at p. 493, said:

"Although the provisions in this endorsement are complicated and involved, they are not, when analyzed, ambiguous. * * *"

We find that the trial court's decision was in error and contrary to law in finding that Section 4509.51, Revised Code, modified the policy, and that the case of *Firestone Tire & Rubber Co.* v. *State Farm Mutual Automobile Ins. Co.*, 119 Ohio App. 116, is the authority for the public policy of Ohio; the judgment was also contrary to law in holding that the policy was ambiguous and therefore extended coverage of the policy to McLendon.

The judgment of the trial court is reversed, and final judgment is hereby ordered for defendant Allstate Insurance Company.

*Judgment reversed*

JOHNSON, P. J., concurs.

LYNCH, J., dissenting. The facts in this case are not in dispute and are set out in the majority opinion. However, the majority opinion omits one fact that I feel is important to this case, namely, the following provisions of the policy of Allstate Insurance Company which appear in Part I:

· "* * * Allstate will pay for an insured all damages which the insured shall be legally obligated to pay because of:

"A. bodily injury sustained by any person, and

"B. injury to or destruction of property,

"arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile or a non-owned automobile.

"* * * The following persons are insured under this Part

"1. The named insured with respect to the owned or a non-owned automobile;

"2. Any resident of the named insured's household with respect to the owned automobile;

"3. Any other person with respect to the owned auto-

mobile, provided the actual use thereof is with the permission of the named insured; * * *."

The above provisions paraphrase the language of Section 4509.51 (B), Revised Code, which is quoted in the majority opinion.

The majority opinion cites the provision of this policy entitled "Compliance with financial responsibility"; comments that the record does not disclose that the policy issued by Allstate Insurance Company in this case was ever "certified" as provided in Section 4509.46, Revised Code; and cites the second paragraph of the syllabus of *Moyer, Admx.,* v. *Aron,* 175 Ohio St. 490.

I have examined the transcript of the record and the briefs filed in the *Moyer, Admx.,* v. *Aron case,* and the insurance policy in the *Moyer case* did not contain the provisions contained in this policy, which paraphrase the language of Section 4509.51 (B). The insurance policy in the *Moyer case* did contain a provision similar to the one in this case, entitled "compliance with financial responsibility laws," which is set out in the majority opinion.

The issue in the *Moyer case* was whether the provision of the policy involved therein on "compliance with financial responsibility laws" extended the coverage of the policy by incorporating the language of Section 4509.51 (B), as a matter of law, into the policy. Obviously, the *Moyer case* is not applicable to this case, because the policy in this case contains the language of Section 4509.51 (B) as a part of the insurance contract.

The majority opinion holds that "the judgment [of the trial court] was also contrary to law in holding that the policy was ambiguous." The pertinent parts of the trial court's journal entry are set out as follows:

"* * * Having considered the evidence, exhibits, and stipulations of fact, the court sustains the motion for summary judgment on authority of R. C. 4509.51, which is included in the policy; *Wall* v. *Windman,* 142 So. 2nd 537, 4th Circuit; and *Firestone* v. *Mutual Ins. Co.,* 119 Ohio App. 116; the law is well settled that the language of the policy will be construed most favorably to the insured, 143 Ohio St. 215.

"The court finds from the pleadings, the evidence, and the stipulations of fact that reasonable minds can come to but one

conclusion and that conclusion is adverse to defendant, Allstate Insurance Company, * * *."

The case to which the trial court referred as authority that the language of the policy will be construed most favorably to the insured is *Bobier* v. *National Casualty Co.*, 143 Ohio St. 215, the first two paragraphs of the syllabus of which are as follows:

"1. A policy of indemnity insurance is to be construed in the light of the subject matter with which the parties are dealing and the purpose to be accomplished, and the language used must be given its ordinary and commonly accepted meaning.

"2. In case of ambiguity in the language used by the insurer in an indemnity insurance policy, such language will be construed most favorably to the insured."

The trial court held that reasonable minds can come to but one conclusion and that conclusion is adverse to defendant Allstate Insurance Company.

The legal question in this case is whether coverage is provided in this policy by the provisions in Part I for "damages which the insured shall be legally obligated to pay because of * * * injury * * * arising out of the * * * maintenance or use" by a person using the insured's automobile with the consent of the insured, or whether coverage is limited by the provisions excluding an automobile "while used in an automobile business" which is defined as "the business of selling, repairing, servicing, storing or parking of automobiles."

In my opinion the issue in this case is whether the incorporation of the language of Section 4509.51 (B) into this insurance policy extends the coverage of such policy so that it provides coverage for any person having use of the insured's automobile with the permission of the insured for injury arising out of either (1) the use or (2) maintenance of the owned automobile. If coverage is so extended, I would heartily agree with the trial court. The problem is construing the legal effect of the following language of this policy: "* * * which the insured shall be legally obligated to pay."

The briefs of both parties shed no light on this. The plaintiff assumes that there is extended coverage, and the defendant assumes that the incorporation of the language of Section 4509.51 (B) does not extend coverage.

The general rule is that the owner of a motor vehicle is not

liable for the negligent operation of his vehicle by a garageman or mechanic to whom he has turned it over for repairs, since the garageman or mechanic is deemed to be an independent contractor. 6 Ohio Jurisprudence 2d 501, Automobiles, Section 261; 8 American Jurisprudence 2d 132, Automobiles and Highway Traffic, Section 578.

I presume this is the basis for the position of defendant-appellant. However, the issue is whether this general rule is inapplicable in light of the express provisions of the insurance policy.

Since the provisions of the policy at issue paraphrase the language of Section 4509.51 (B), Revised Code, most of the argument in the case has centered on this statute. Because of the provision in this policy labeled "compliance with financial responsibility laws," the majority opinion cites Section 4509.46, Revised Code, which provides in part as follows:

"Proof of financial responsibility may be furnished by filing with the registrar of motor vehicles the written certificate of any insurance carrier authorized to do business in this state certifying that there is in effect a motor-vehicle liability policy for the benefit of the person to furnish proof of financial responsibility. * * *."

However, in my opinion, all that Section 4509.46, Revised Code, does to this case is to cause confusion, because I feel that it does not apply. This section had a purpose in the old Ohio Financial Responsibility Law (Section 6298-1 et seq., General Code), which was enacted in 1943, and which only applied when a person was convicted of certain serious traffic offenses or failed to satisfy a judgment against him for bodily injury or property damage arising out of operation of a motor vehicle. Proof of ability to satisfy such a judgment could be submitted by filing with the registrar of motor vehicles a written certificate of a "Motor Vehicle Liability Policy." However, the Financial Responsibility Law has been revised considerably since its enactment. Under the present law, the driver of any motor vehicle which is involved in an accident must file a written report of the accident with the registrar of motor vehicles (Section 4509.06, Revised Code). Such a report indicates whether such person carries a policy of liability insurance. If the report states that the driver carries liability insurance, the

registrar of motor vehicles verifies this by writing to the insurance company. If the insurance company confirms coverage, this satisfies the security requirements under Section 4509.19 (A) (5), Revised Code. Thus, the provisions of Section 4509.46, Revised Code, would usually have no legal effect in a case such as this.

Section 4509.11, Revised Code, provides that the sections of the Financial Responsibility Law concerning its security requirements apply to the driver and owner of any motor vehicle which is in any manner involved in a motor vehicle accident within this state.

Therefore, if Henry Higgins, the insured, would not have liability insurance, it is my understanding that he would be subject to the Financial Responsibility Law under the circumstances of this case, and if the judgment in this case on behalf of plaintiff-appellee against Joe McLendon was not satisfied, the registrar of motor vehicles, under the provisions of Section 4509.17, Revised Code, would suspend the driver's license of Henry Higgins, as well as the registrations of all motor vehicles owned by Henry Higgins. Under these circumstances, I am inclined to feel that Henry Higgins would be "legally obligated to pay," or he would forfeit his driver's license and automobile license plates.

However, Henry Higgins obtained a liability insurance policy from defendant-appellant, and thus complied with the provisions of the Financial Responsibility Law. The question, as I stated before, is whether the incorporation of the language of Section 4509.51 (B) into this insurance policy had the effect of extending the coverage to provide liability under the circumstances of this case.

I can think of no possible purpose for the incorporation of the language of Section 4509.51 (B), Revised Code, into this policy other than for it to have the same meaning as in this statute. Since this statute spells out the requirements of an owner's liability policy so as to comply with the Financial Responsibility Law, I come to the conclusion that this provision in the policy specifically incorporated the legal obligations of the insured under the Financial Responsibility Law into this policy. I would affirm the judgment.