**Mabel M. HAHN, Plaintiff,**

v.

**Sonja L. RANSON et al., Defendants.**

**Civ. A. No. 70–103.**

United States District Court,
S. D. Ohio, E. D.

April 11, 1972.

---

James F. Graham, Kenneth M. Mortimer, Zanesville, Ohio, for plaintiff.

Charles E. Brown, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, Ohio, for defendants.

James D. Booker, Richard C. Deeg, Williams, Murray, Deeg & Ketcham, Columbus, Ohio, for defendant, Universal Underwriters Ins. Co.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on the supplemental complaint filed by the plaintiff, Mabel M. Hahn, the answer of defendant Sonja. L. Ranson and the amended answer of defendant Universal Underwriters Insurance Company. Plaintiff seeks to collect from the Universal Underwriters Insurance Company the unsatisfied portion of the judgment which the Court rendered against the defendant Sonja L. Ranson. This matter is submitted to the Court for decision on the following stipulated facts which the Court hereby adopts.

1. It is stipulated by and between all parties that the following constitutes an agreed statement of facts as to all relevant matters relating to the issues raised by the Supplemental Complaint.

2. On August 25, 1968, Mabel M. Hahn sustained injuries as a result of an automobile collision caused by the alleged negligence of Sonja L. Ranson.

3. On November 5, 1970, this Court rendered judgment in Civil Action 70–103 in favor of Mabel M. Hahn against Sonja L. Ranson in the sum of Eight Hundred Fifty Thousand, Four Hundred Twenty-Six Dollars and Thirty-Nine Cents ($850,426.-39).

4. The defendant, Universal Underwriters Insurance Company, insured Earl Davis Chevrolet, Inc. under General Liability Policy No. 11930 from May 1, 1968 through May 1, 1969, a true and complete copy of which is offered as parties Joint Exhibit A.

5. That during the entire year of 1968, Sonja L. Ranson was residing

with her husband, Peter G. Ranson, at Mansfield, Ohio. Peter G. Ranson was the owner of the 1960 Pontiac automobile which on August 19, 1968 Sonja L. Ranson took to the Earl Davis Chevrolet, Inc. service garage before starting a trip to Marietta, Ohio. On that day, the service manager for Earl Davis Chevrolet, Inc. advised Mrs. Ranson against driving the Pontiac on any trip before it was repaired. Mrs. Ranson then took the Pontiac to her home to obtain her husband's advice.

6. At the time Sonja L. Ranson took the Pontiac to the garage for service, her husband, Peter G. Ranson, was out of Mansfield on business. The same day the Pontiac was taken to the garage for service, Mrs. Ranson reached her husband by telephone and was instructed by her husband to return the Pontiac to the Earl Davis Chevrolet, Inc. garage to be repaired and that he, Peter G. Ranson, would make arrangements with Earl Davis for the use of a rental car while the Pontiac was being repaired.

7. Peter G. Ranson phoned Earl Davis, president of Earl Davis Chevrolet, Inc. and agreed to rent from the corporation a rental automobile while his Pontiac remained at the Garage to be repaired. It was understood between Peter G. Ranson and Earl Davis that the service rental automobile would be given to his wife on that day, August 19, 1968, and that it would be used by her for her trip to Marietta, Ohio until the Pontiac was repaired. It was further understood and agreed between Peter G. Ranson and Earl Davis that Peter G. Ranson would pay the customary service rental charge of Five Dollars ($5.00) per day plus a mileage charge, that he would pay for the repair of the Pontiac automobile and that a rental agreement would be signed by Peter G. Ranson upon his return to Mansfield later that day or within the next few days.

8. At the time Peter G. Ranson signed Joint Exhibit B (car rental agreement), dated August 19, 1968 and left the document with the service manager, there was no other writing on the agreement except the printed language and except for his signature. Sometime later, and outside the presence of Peter G. Ranson and Sonja L. Ranson, but prior to August 25, 1968, the additional writing appearing on Joint Exhibit B was inserted by George Lilley who was authorized to do so on behalf of Earl Davis Chevrolet, Inc.

9. That at no time had Sonja L. Ranson or Peter G. Ranson been stockholders, directors of, partners in, paid employees of or salesmen of or members of the household of Earl Davis Chevrolet, Inc., Earl Davis Leasing Corporation, Mohican Financial Company, Earl G. Davis, Jr., Eleanor H. Davis, Paul Wood or Sally Wood.

10. From August 19, up to and including August 25, 1968, Sonja L. Ranson had possession of the 1968 Chevrolet car belonging to Earl Davis Chevrolet, Inc. while her husband's 1960 Pontiac remained at the Earl Davis garage for repairs. On August 25, 1968, when returning to Mansfield, Ohio from her trip from Marietta, the collision occurred between the 1968 Chevrolet automobile owned by Earl Davis Chevrolet, Inc., which she was driving, and the automobile in which plaintiff, Mabel Hahn, was a passenger. This collision being the same collision referred to in paragraph number one of this Agreed Statement of Facts.

11. Mabel M. Hahn's judgment in Case No. 70–103 remains unmodified and unreversed and has been satisfied only to the extent which it has been paid by the Allstate Insurance Company which carried an insurance policy on the Pontiac auto-

mobile belonging to Peter G. Ranson under which defendant, Sonja L. Ranson, was an insured at the time of the collision.

The Court has jurisdiction under the provisions of Title 28, United States Code, Section 1332. Venue lies in this Court under the provisions of Title 28, United States Code, Section 1391(a).

The sole issue for determination is whether or not defendant Sonja Ranson is insured under the Garage Liability Policy and endorsements issued by defendant Universal Underwriters to the Earl Davis Chevrolet Company, Mansfield, Ohio, and which was in full force and effect on August 25, 1968, the date the plaintiff was injured in an automobile collision caused by the negligence of Sonja Ranson.

As indicated by the agreed facts, Sonja Ranson was driving a car which was rented from the Earl Davis Chevrolet Company by her husband at the time she collided with the car in which plaintiff was a passenger. The rental agreement signed by Sonja Ranson's husband which was submitted to the Court as joint exhibit B states:

> I understand there is no bodily injury or property damage liability insurance coverage provided by Dealer under this contract and I hereby certify that I currently maintain in force bodily injury and property damage liability insurance with respect to my presently owned automobile.

Thus, there appears to be no doubt as to the understanding which existed between the parties to the car rental agreement. This fact is significant in considering the coverage of the insurance contract between Earl Davis Chevrolet and the defendant Universal Underwriters Insurance Company.

In determining whether Sonja L. Ranson was insured under the policy and endorsements issued by Universal Underwriters to Earl Davis Chevrolet, the Court must determine the effect of endorsement A–5205 on the terms of the General Liability Automobile Policy (joint exhibit A). Plaintiff in her brief admits that the standard provisions of the policy exclude from coverage liability for bodily injury or property damage arising from the operation of an automobile while rented to others by the named insured. Under Policy Provisions—Part A, "named insured" means the person or organization named in Item I of the declarations of the policy. Earl Davis Chevrolet, Inc. is a named insured. In addition, under the Garage Insurance Coverage Part of the policy at Section V(3)(a), the following are insured with respect to the automobile hazard:

> Any partner, or paid employee or director or stockholder thereof or a member of the household of the named insured . . . while using an automobile covered by this policy or when legally responsible for the use thereof provided the actual use of the automobile is by the named insured or with his permission . . .

The Garage Insurance Coverage Part of the Policy in Section II, Exclusion (e)(2)(ii) specifically excludes coverage for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile while rented to others by the named insured . . ."

However, plaintiff contends that endorsement A–5205, which is part of the policy sold to Earl Davis Chevrolet, Inc., so modifies the exclusion set out above as to bring Sonja Ranson within the coverage of the policy. Endorsement A–5205 reads as follows:

*Customer Rental*

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

GARAGE INSURANCE

It is agreed that the insurance under the bodily injury liability, property damage liability and automobile medical payments coverages applies with respect to any automobile rented by the named insured while such custom-

er's automobile is temporarily left with the named insured for service, repair or sale. The premium for this insurance shall not be subject to adjustment upon cancellation by the named insured.

■ The Court points out that the insurance under the bodily injury liability, property damage liability and automobile medical payments coverages mentioned in the endorsement are applicable only when the "insured" becomes legally obligated to pay damages. Persons who are "insured" are listed in Part V of the Garage Insurance Coverage Part of the Policy and the list does not include customers who have rented a replacement car. It is the Court's interpretation that this endorsement does not help plaintiff because neither Earl Davis Chevrolet nor any other person insured has become legally obligated to pay damages because of bodily injury or property damage.

Plaintiff, in her brief, argues that Endorsement A–5205 creates an ambiguity because it does not explicitly say that renters become persons insured. The Court observes that such an ambiguity—indeed, if one exists—is created by the fact that the endorsement says nothing about the renter's status.

Plaintiff argues that the endorsement broadens the category of persons insured. To support this argument plaintiff relies on the principle that a contract of insurance is construed liberally in favor of the insured and strictly against the insurer when the contract is ambiguous.

■ The Court, however, places reliance on the cardinal principle pertaining to the construction and interpretation of insurance contracts, namely that the intention of the parties should control. 30 O.Jur.2d, § 206.

Neither Sonja Ranson nor her husband, however, entered into any contract for insurance with Universal. As stated above, the rental agreement signed by Mr. Ranson specifically set out that Earl Davis Chevrolet was providing no liability coverage to the renter.

The Court notes that the additional premium for the customer rental endorsement was only Twenty-Two Dollars. While there is no evidence before the Court as to the premium which an agency would have to pay for liability insurance covering its renters, common experience indicates that such coverage would cost at least as much as an individual would pay for liability insurance and not the nominal sum of Twenty-Two Dollars.

■ The Court finds that the purpose of endorsement A–5205 is to protect the named insured and the persons insured as set out in Part V of the Garage Insurance Coverage Part from a suit based on negligent entrustment or on some other theory by which they could be held liable for bodily injury or property damage which occurred while the car was rented to another. The Court finds that the endorsement was not intended to change the class of persons insured. Rental customers are not insureds under the policy.

In arriving at this construction of the contract, the Court is bound to apply the law of Ohio. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 62 L.Ed. 1188 (1938). However, only one Ohio case has been cited to the Court in which the question of construction presented in this action was raised, All America Insurance Co. v. Universal Underwriters Insurance Co. (No. 23154, C.P.Court, Medina County, Ohio, Apr. 9, 1970). That case was decided without opinion in defendant's favor.

The effect of a customer rental endorsement substantially identical to Endorsement A–5205 was considered in the case of Gulash v. Jerry Davidson Buick, Inc., 10 Mich.App. 238, 159 N.W.2d 168 (Ct. of App. of Mich., 1969). *Gulash* involved a suit by the plaintiff against Davidson Buick and Universal Underwriters for damages sustained when a Davidson Buick customer operating an auto rented from Davidson Buick struck

the plaintiff. In construing the Universal Underwriters' policy, the Court held that the customer rental endorsement did not enlarge the definition of "insured." The Court said, "As we read the policy, the purpose of the customer rental endorsement is to protect the named insured under the policy from its statutory liability as the owner of the 'loaned' automobile." The Court further noted that the literal language of the policy does not purport to insure persons other than those specified in the policy.

The customer rental endorsement has a dual purpose. First, it limits the coverage so as to exclude the general business of car leasing. This is evidenced by the small premium for the additional coverage of the endorsement. But, second, the endorsement extends the coverage to include negligence in the rental of substitute cars while the customer's car is being repaired. The policy endorsement A–5205 protects the garageman from liability arising from or connected with the garage business and not from the negligent acts of the person to whom the car is rented.

Similar decisions were obtained in the unreported decision in American Fidelity Fire Insurance Co. v. Universal Underwriters Insurance Co., No. 78794 (Circuit Ct. for Wayne County, Mich., Mar. 16, 1967) in which the Court said:

> This endorsement extending the customer rental coverage relates to "such insurance as is afforded by the policy for bodily injury, liability and for property damage liability . . ." Such insurance is afforded to a specifically defined insured.

In the case of Moyer v. Aron, 175 Ohio St. 490, 493, 196 N.E.2d 454 (1964) the Supreme Court of Ohio considered the definition of the word "insured" in a Universal Underwriters policy and held that a person test driving an auto belonging to an insured dealer was not an insured under the policy. In the absence of agency, there is no vicarious liability on the owner of a car, while such car is being operated by anyone

else, merely because one is the title owner of the car. Trolio v. McLendon, 4 Ohio App.2d 30, 211 N.E.2d 65 (Ct.App. Mahoning Cty., 1965). See also Orth v. Universal Underwriters Insurance Co., 284 F.2d 857 (9th Cir. 1961); Universal Underwriters Ins. v. Bush, 272 F.2d 675 (10th Cir., 1959).

Upon consideration of the entire contract of insurance and the intention of the parties as manifest by the policy, the nominal premium for the customer rental endorsement, and the provision in the customer rental agreement in which Earl Davis Chevrolet specifically states that it extends no liability coverage to the renter, the Court determines that Sonja Ranson was not an insured under the provisions of the Universal Underwriters policy issued to Earl Davis Chevrolet.

Judgment should be and hereby is entered for the defendant, Universal Underwriters Insurance Company, on the supplemental complaint.