Argued and submitted June 11, affirmed July 21, 1980

# FIRST FAR WEST TRANSPORTATION, INC.
## *Appellant,*
### *v.*
# CAROLINA CASUALTY INSURANCE COMPANY,
## *Respondent.*

### (No. A7810-17210, CA 15590)

614 P2d 1187

Gerald R. Pullen, Portland, argued the cause and filed the brief for appellant. With him on the brief

were James G. Breathouwer and Breathouwer & Gilman, Portland.

James M. Callahan, Portland, argued the cause and filed the brief for respondent. With him on the brief was Landis, Aebi & Bailey, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Plaintiff brought this action for a declaratory judgment seeking a declaration of its coverage under an "additional interest endorsement" to an automobile liability insurance policy issued by defendant to Ralph Hollister. From the trial court's decision that plaintiff was not covered under the endorsement, plaintiff appeals. We affirm.

On November 20, 1975, plaintiff, formerly known as Trans-Pac Equipment Inc. dba Gunderson-White Trucks, Inc., leased a tractor-trailer combination to Hollister. Under the lease agreement Hollister as lessee was required to maintain insurance "protecting Lessor, as an additional insured, or loss payee, or both at the option of the lessor . . . ." At that time Hollister, a commercial truckdriver, was the named insured under an automobile liability insurance policy issued by defendant. Contemporaneously with the lease agreement, defendant issued an "additional interest endorsement," which provided that the Hollister "policy is extended to cover the interest of: Gunderson-White Trucks, Inc. (Lessor) * * * but only as respects the equipment specifically described below [the tractor-trailer leased to Hollister], while operating exclusively in the business of the named insured * * * ." The endorsement specifically stated that it became a part of the policy issued to Hollister. No additional premium was charged for this endorsement.

On December 2, 1975, while Hollister was operating the leased truck in the course and scope of his trucking business, he lost control of the truck on the exit of the Fremont Bridge in Portland, crashed through a guard rail and collided with a parked truck and a building, whereupon the truck exploded and burst into flames, killing Hollister. The personal representative of Hollister's estate brought a wrongful death action against plaintiff in three counts. Count I alleged the truck was in an unreasonably dangerous

condition when leased to Hollister by plaintiff due to a defective brake system, which defect caused Hollister's death. Count II alleged various specifications of negligence by plaintiff in leasing the truck, repairing the air compressor and main air line of the brake system, failing to warn Hollister of the defective brake system, and representing the safety of the brake system. Count III alleged that plaintiff breached warranties to Hollister (1) that the truck would remain in good operating condition for 30 days after delivery, and (2) on repairs performed on or about December 1, 1975, by plaintiff on the air compressor. Plaintiff tendered the defense of the wrongful death action to defendant, which refused the tender. In this action plaintiff requests a declaration that under the endorsement defendant has the duty to defend the wrongful death action and to pay all costs, attorney's fees, and damages incurred in the action.

Under the policy issued by defendant to Hollister, defendant agreed

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

The policy also required defendant to "defend any suit against the insured alleging such injury * * * and seeking damages on account thereof * * *." Plaintiff argues that it was made an additional insured under the endorsement and, therefore, it is entitled to the protection of these provisions. Defendant contends that the endorsement only protects plaintiff from any vicarious liability it may incur as a result of injuries to third parties caused by the negligence of the lessee.

In support of its position, plaintiff argues that we should construe the contract in accordance with the maxim stated in *O'Neill v. Standard Insurance,* 276 Or 357, 361, 554 P2d 997 (1976):

" * * * The defendant prepared the insurance contract and the certificate of insurance held by the decedent. Such contracts for insurance are construed liberally in favor of the insured.

" 'The language used in a contract of insurance is entitled to a construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed to support a view that will protect the insured and prevent forfeiture. [Citations omitted.]' *Schweigert v. Beneficial Life Ins. Co.,* 204 Or 294, 301, 282 P2d 621 (1955)."

This rule is particularly applicable when the policy language is ambiguous. *See, e.g., Allen v. Continental Casualty Co.,* 280 Or 631, 633, 572 P2d 617 (1977); *Shadbolt v. Farmers Insur. Exchange,* 275 Or 407, 411, 551 P2d 478 (1976).

■     As defendant properly points out, the rule of liberal construction in favor of the insured is subordinate to the rule that with insurance contracts, as with other contracts, the primary and governing consideration is to ascertain the intent of the parties. *Waller v. Rocky Mtn. Fire & Casualty,* 272 Or 69, 79, 535 P2d 530 (1975); *Denton v. International Health & Life,* 270 Or 444, 449, 528 P2d 546 (1974); *Ramco. Inc. v. Pacific Ins.,* 249 Or 666, 439 P2d 1002 (1968); *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.,* 202 Or 277, 317, 273 P2d 212, *reh den* 275 P2d 226 (1954). In *I-L Logging, supra* at 318, the court quoted from 13 Appleman, Insurance Law and Practice § 7383:

" 'It has been stated, therefore, that a court will look to the entire instrument and all of its provisions to ascertain its meaning, and will construe it as a whole or in its entirety. * * * The entire context and subject matter of the contract of insurance will be considered in determining the meaning and application of specific words and expressions. Nor will any insurance policy be considered ambiguous merely because a word or phrase, isolated from its context, is susceptible to more than one meaning, or because, in its context, it is susceptible to one reasonable and one unreasonable meaning.

" 'The courts will, rather, take into consideration the apparent object or purpose of the insurance, in making its construction, and may consider, along with the context of the policy, the subject matter of insurance, the situation of the parties, and the circumstances surrounding the making of the contract.' "

The court stressed that a concession by the court that policy language is ambiguous does not require it to adopt the construction urged by the insured. Rather, that rule of construction "is applied when the particular facts of a case warrant its application and when such application will lead to a sound conclusion." 202 Or at 319.

■■ An endorsement becomes a part of the insurance contract and must be construed with it. *Close-Smith v. Conley,* 230 F Supp 411, 417 (D. Or. 1964); 13A Appleman, Insurance Law and Practice § 7537 (1976). To the extent of any conflict between the policy and endorsement, the endorsement controls. *Close-Smith v. Conley, supra.*

■ An insurer's duty to defend "is determined by comparing the terms of the insurance policy with the allegations in the underlying damage [complaint]." *General Ins. v. Western Am. Development,* 43 Or App 671, 603 P2d 1245 (1979).

"When a complaint is filed against the insured which alleges, without amendment, that the insured is liable for conduct covered by the policy, the insurer has the duty to defend the insured, even though other conduct is also alleged which is not within the coverage. *Oakridge Comm.Ambulance v. U.S. Fidelity,* 278 Or 21, 24, 563 P2d 164 (1977); *Ferguson v. Birmingham Fire Ins.,* 254 Or 496, 507 460 P2d 342 (1969); *Blohm et al v. Glens Falls Ins. Co.,* 231 Or 410, 414-15, 373 P2d 412 (1962). The insurer owes a duty to defend if the claimant can recover against the insured under the allegations of the complaint *upon any basis* for which the insurer affords coverage. *Oakridge Comm. Ambulance v. U.S. Fidelity, supra*

at 24; *Casey v. N.W. Security Ins. Co.,* 260 Or 485, 489, 491 P2d 208 (1971)." *Nielsen v. St. Paul Companies,* 283 Or 277, 280, 583 P2d 545 (1978). (emphasis in original)

Plaintiff argues that each count of the wrongful death complaint states a cause of action within the coverage of the policy. The parties agree that the first count, which alleges the lease of a product in an unreasonably dangerous condition, is based on strict liability in tort. Since, plaintiff contends, such liability arises from the lease of a product, the injury arose from plaintiff's ownership of the truck and is, therefore, covered by the policy. The second count, which alleges plaintiff's negligent repair of the truck, and that Hollister's death was caused by that negligence, alleges in substance, plaintiff asserts, that the injury arose from the maintenance of the truck. As a result, plaintiff argues, plaintiff's potential liability was covered by the policy. As to the third count, based on breach of express warranty, plaintiff suggests that the injury arose from plaintiff's ownership of the vehicle.[1]

It is possible that the bare language of the policy is broad enough to protect plaintiff. As discussed above, however, it is important in construing the contract to examine the purpose and subject matter of the insurance, the situation of the parties, and the circumstances of the making of the contract, all of which may bear on the intent of the parties.

■ ■ In order for coverage to attach, there must be a causal connection between the injury and the risks which the parties contemplated would be covered by the policy. *Oakridge Comm. Ambulance v. U.S. Fidelity,* 278 Or 21, 25-7, 563 P2d 164 (1977). The Hollister policy was a standard automobile liability insurance

---

[1] Defendant notes that an exclusion in the policy bars coverage for liability assumed by the insured under any contract or agreement. Although defendant did not plead this exclusion as an affirmative defense, plaintiff stipulated at trial that defendant could rely on this without amending its pleadings. In light of our resolution of this case, we need not resolve the question of the applicability of this exclusion.

policy, covering the typical risks associated with the ownership, maintenance and use of an automobile. The risks from which plaintiff is seeking protection here, however, are not the ordinary risks of operating an *automobile.* Rather, liability for product defects, negligent repair, and breach of warranty are more appropriately thought of as risks inherent in the operation of plaintiff's *business. Cf. Oakridge Comm. Ambulance v. U.S. Fidelity, supra,* 278 Or at 27. These are not the type of risks from which Hollister, as a commercial truckdriver, would have purchased protection. Under plaintiff's theory of the case plaintiff would at no extra cost receive under the endorsement to the automobile liability insurance policy protection from these business risks.

■　　　The evidence does not support plaintiff's position. Plaintiff introduced no evidence to suggest that when it arranged for the additional interest endorsement it intended to obtain the type of coverage sought here.[2] The evidence tends to show that plaintiff did not expect to receive such coverage.

The fact that the endorsement was issued for no additional premium weighs against plaintiff. As the court stated in *Close-Smith v. Conley,* 230 F Supp 411, 419 (D. Or. 1964), "it is a fair assumption that the parties intended to limit the risk in accordance with the premium established and charged." *See Hahn v. Ranson,* 351 F Supp 318, 322-23 (S.D. Ohio 1972), *aff'd,* 471 F2d 610 (6th Cir. 1973); *Aetna Insurance Company of Hartford v. Kent,* 85 Wash 2d 942, 540 P2d 1383 (1975). It is unlikely that defendant intended to expand the coverage of the policy to the extent urged by plaintiff for no extra charge or that plaintiff reasonably expected such wider coverage.

Further, defendant introduced evidence that plaintiff holds an insurance policy issued by another

---

[2] After recounting to the court the various admissions and stipulations agreed to by the parties, plaintiff rested.

[346]

insurer, for which policy plaintiff paid a premium, covering the same business risks against which plaintiff seeks protection here. This evidence suggests that under the circumstances plaintiff did not intend to procure similar coverage under the endorsement. *See Dart Transportation Service v. Mack Trucks, Inc.,* 9 Cal App 3d 837, 88 Cal Rptr 670 (1970).

Defendant also notes that in the definition of "insured" in the Hollister policy appears the following language: "The insurance with respect to any person or organization other than the named insured * * * does not apply: (1) to any person or organization * * * operating an automobile sales agency * * * " Plaintiff's complaint admits that it is in the business of selling and leasing trucks. Defendant does not raise this provision to defeat coverage of plaintiff otherwise afforded under the policy, but to show that in light of this language it is unlikely the parties intended to contract for the coverage argued for by plaintiff. We find merit in this argument.[3]

■ Defendant offered testimony by Hollister's insurance agent, under an offer of proof, that in the custom and trade of the insurance industry the terms of the endorsement were understood to afford protection only against the lessor's vicarious liability arising out of the lessee's negligence. The trial court sustained plaintiff's objection to this testimony. The testimony was admissible, however, to show defendant's understanding of the coverage provided under the

---

[3] Contrary to plaintiff's contention, Gunderson-White is not a "named insured" under the policy. The front page of the policy has in the space next to the term "named insured" the name "Ralph Hollister DBA: Ralph Hollister Trucking." Further, plaintiff's complaint alleged in paragraph V that the insurance policy protected "plaintiff as an additional insured and loss payee as respects the subject vehicle and equipment *while operating in the business of Ralph Hollister.* " (emphasis added), thereby admitting that the phrase "business of the named insured" in the endorsement refers to Hollister's, and not plaintiff's, business. This language also suggests that the parties did not intend generally to insure risks arising from the operation of the lessor's business.

endorsement. *Hamacher v. Tumy,* 222 Or 341, 358-59, 352 P2d 493 (1960), and supports defendant's position.

*Dart Transportation Service v. Mack Trucks, Inc.,* 9 Cal App 3d 837, 88 Cal Rptr 670 (1970), involved facts similar to those in the present case. Dart leased, or purchased under conditional sales contracts, several trucks manufactured by Mack. While driving one of these trucks, a Dart employe was injured when the truck became unmanageable due to a defective steering apparatus and struck a light post. The injured employe brought an action against Mack for personal injuries alleging strict liability, negligence, and breach of warranty. Dart also brought an action against Mack, for damage to the vehicle. Both the driver and Dart recovered substantial judgments. The trial court found that Mack's liability was based on strict liability and breach of warranty. In each case Mack's insurer paid all defense expenses and all damages and costs assessed against Mack. The issue in *Dart* was whether an automobile liability insurance policy held by Dart as the named insured, under an endorsement to which Mack was "an additional insured but only as respects liability arising out of the use of automobiles in the business of the named insured," covered Mack as to the accident. The court held that Dart's policy and the endorsement issued to Mack did not cover Mack for strict liability or liability for breach of warranty. The court found it significant that Mack, a manufacturer, had insured itself against strict liability, and that Dart, in the transportation business, had no need of insurance coverage for manufacturer's strict liability. From this evidence, along with evidence that Mack agents orally requested that Dart obtain insurance to cover any conceivable secondary liability on Mack's part due to Dart's negligence, the court concluded that Mack intended only to obtain protection from vicarious liability.

■ From the foregoing we conclude that the parties did not intend that the endorsement protect

plaintiff from the risks of strict liability, negligent repair, or breach of warranty. Therefore, defendant has no duty to defend plaintiff in the wrongful death action alleging plaintiff's liability under those theories.

Affirmed.