Argued and submitted January 15, affirmed October 2, 1985

INDUSTRIAL INDEMNITY COMPANY,
*Appellant,*

*v.*

DUWE,
*Respondent.*

(16-81-10790)

AMERICAN STATES INSURANCE COMPANY,
*Respondent.*

*v.*

INDUSTRIAL INDEMNITY COMPANY,
*Appellant.*

(16-81-09242)
(CA A31771)
707 P2d 96

Ronald B. Teryenbach, Eugene, argued the cause for appellant. With him on the briefs were William G. Wheatley and Jaqua, Wheatley, Gallagher & Holland, P.C., Eugene.

Patrick J. Kouba, Eugene, argued the cause for respondents. With him on the brief was Atherly, Butler & Burgott, Eugene.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

These consolidated cases arose after settlement of a wrongful death case against defendant Duwe and his employer, Coast Distributors, Inc. Under the settlement agreement, Industrial Indemnity, which was the liability insurer for Coast Distributors, and American States Insurance Company, which was the liability insurer for Duwe, paid equal amounts to the estate of the decedent. In these actions, American States seeks pro rata contribution from Industrial Indemnity on the ground that Duwe also was an insured under the policy issued by Industrial Indemnity to Coast Distributors; Industrial Indemnity seeks indemnity against Duwe for the amount it paid to settle the claim against Coast Distributors, as subrogee to the rights of its insured. Following trial to the court, the court entered judgment in favor of American States against Industrial Indemnity for $7,500, dismissed Industrial Indemnity's complaint against Duwe and entered judgment awarding Duwe costs and disbursements against Industrial Indemnity. We affirm.

Duwe's liability in the wrongful death action was predicated on his alleged negligence in furnishing alcohol to one Pitts at Coast Distributor's 1978 employe picnic, when Pitts was visibly intoxicated, and Pitts' subsequent involvement in an automobile accident that resulted in the death of another person. The parties stipulated that Duwe was negligent in providing alcohol to Pitts and that Coast Distributors, as Duwe's employer, was vicariously liable. The dispute concerns only the interpretation of the contract of insurance issued by Industrial Indemnity to Coast Distributors, which extended liability coverage to "any *executive officer,* director or stockholder [of Coast Distributors] while acting within the scope of his duties as such." (Emphasis supplied.) The term "executive officer" is not defined in the policy. The trial court concluded that Duwe was an "executive officer" of Coast Distributors within the meaning of that term and, accordingly, entered judgment for American States on its contribution claim and dismissed Industrial Indemnity's indemnity claim against Duwe. In this appeal, Industrial Indemnity's sole assignment is that the trial court erred as a matter of law in concluding that Duwe was an "executive officer" of Coast Distributors within the meaning of the insurance policy.

We first examine the structure of Coast Distributors, Inc., and the position and functions of Duwe within the corporate hierarchy. Both are outlined in detail by the trial court in special findings of fact; Industrial Indemnity does not contend that those findings are not supported by substantial evidence in the record, and we rely on them in summarizing the relevant facts.

Coast Distributors, Inc., has its headquarters in Portland and is engaged in the beer and wine distribution business. The only elected corporate officers are the president, secretary-treasurer and controller. In 1978, Stuart Durkheimer, James Durkheimer and Calvin Piehl were the elected officers; they also were the principal stockholders and comprised the board of directors. Coast Distributors has seven branches, each headed by a branch manager. The position of branch manager is not provided for by the corporate charter or bylaws. There is one general manager to whom each branch manager reports; the general manager reports directly to the corporation president. Separate accounting records are maintained for each branch, and each branch manager is responsible for the performance of his *respective* branch.

At the time in question, Duwe was manager of the Springfield branch. In that capacity, he supervised all of the 14 or 15 employees in that branch, including the sales supervisors, truck drivers and office personnel. He was responsible for training employes and had authority to hire temporary personnel in certain situations. He could discharge employes for theft or for drinking on the job, although employe terminations for other reasons were subject to approval by the general manager. He was responsible for maintaining company vehicles at the branch and had authority to purchase fuel directly from suppliers and to contract for vehicle repairs not exceeding $500. He also had independent authority to hire janitorial services, to purchase janitorial and office supplies and to approve payment of utility expenses. He was provided a monthly office expense account of between $900 and $1,200 and had discretionary authority to use funds from the account for sales-related expenses.

Duwe's administrative responsibilities included meeting on a monthly basis with the general manager and the other branch managers. One purpose of those meetings was to

discuss corporate policies or procedures, and he occasionally recommended or suggested policy changes. With the exception of approximately one visit per month from the general manager, he functioned autonomously without direct supervision and was responsible for day-to-day operations of the branch in conformance with corporate guidelines and policies. His primary contact with the headquarters of Coast Distributors was through the general sales manager and the administrative coordinator; he had no responsibility or authority for operations of any other branch and did not attend meetings of the board of directors.

In construing an insurance contract, as with other contracts, our primary consideration is to ascertain the intent of the parties. *First Far West Transp. v. Carolina Casualty Ins.*, 47 Or App 339, 343, 614 P2d 1187 (1980). Our narrow task here is to determine the meaning to be given the term "executive officer." We have found no Oregon appellate cases dealing directly with the issue in the context of a liability insurance policy. Both parties, however, cite cases from other jurisdictions in support of their respective positions. Although they are not controlling, the cited cases are helpful in our analysis.

Industrial Indemnity relies principally on *Bruce v. Travelers Insurance Company*, 266 F2d 781 (5th Cir 1959), and *Hadrick v. Diaz*, 302 So 2d 345 (La App 1974). In *Bruce*, the issue was whether a drilling foreman for Gulf Refining Co. was an executive officer within the scope of a liability insurance policy that extended coverage to executive officers. The plaintiff's theory was that the foreman was an executive officer, because he was invested with the general conduct and control of the business of Gulf at a particular well location. The complaint was dismissed on the insurer's motion for summary judgment on the ground that the foreman was not an executive officer. The Fifth Circuit Court of Appeals affirmed, pointing to unambiguous language in Gulf's bylaws that provided that specifically named officers must be elected by the board of directors, that the board could appoint other officers and that the president was the "chief executive officer" of the corporation. It observed that, in a large company with thousands of employes, a supervisor at a given well location did not function as an "executive officer" in the ordinary sense of the term, because "[t]he term [executive

officer] implies some sort of managerial responsibility for the affairs of the corporation generally and it imports a .close connection with the board of directors and high officers of the company." 266 F2d at 784. The court further suggested that a critical distinction between an officer and an agent or employe was in the manner of their creation—an officer is created by the corporation charter or bylaws and may be elected by the board of directors or shareholders; an agency or employment is created by the officers. 206 F2d at 284-85. Following that reasoning, Industrial Indemnity argues that in the present case it is clear from the corporate charter that Coast Distributors did not intend for Duwe to be considered an executive officer, because he was neither elected by the shareholders nor appointed by the board of directors and because he had no managerial responsibility for the affairs of the whole corporation nor a close connection with Coast Distributor's top officers. *See also Lemmons v. Zurich Insurance Company,* 403 F2d 512 (5th Cir 1968).

In *Hadrick v. Diaz, supra,* the Louisiana Court of Appeals considered whether a process superintendent at a sugar refinery was an executive officer under a comparable insurance policy provision. In contrast to *Bruce v. Travelers Insurance Company, supra,* however, the *Hadrick* court stated that managerial responsibility for the affairs of a corporation generally is not an indispensable prerequisite to the status of executive officer, but only one of numerous factors to be considered. It recognized as factors whether the employe maintained a close connection with the corporate officers and board of directors and whether the employe was empowered to write company checks. It summarized criteria from earlier Louisiana cases:

> "In determining the issue before us, our own courts have considered the following circumstances relevant. (1) Whether the employee's position was created by corporate charter * * *; (2) Whether the employee was formally elected or designated to his office or position by the Board of Directors, the officers or stockholders * * *; (3) Did the employee have authority, discretion and managerial responsibility covering the divergent affairs of the corporation * * *; (4) Did the employee have duties or authority outside his particular department * * *; (5) Was the employee involved in shaping company policy * * *; (6) Did the employee possess authority to alter contract terms or conditions or to change specified company procedure * * *;

(7) Whether the employee had several department heads under his supervision * * *; (8) Whether the employee had a large number of employees under his direction and control, and (9) Did the employee have authority to hire and fire other employees * * *?" 302 So 2d at 353. (Citations omitted.)

The court found that, because the process superintendent satisfied several of the listed criteria, whether he was an "executive officer" was a question of fact.

Industrial Indemnity asserts that Duwe did not meet any of the qualifications of an executive officer set forth in *Hadrick v. Diaz, supra,* and that the trial court, therefore, should have ruled as a matter of law that Duwe is not an "executive officer" within the meaning of the contract. Before we address that contention, however, we review the cases cited by respondents.

Respondents first argue that the strict definition of executive officer stated by the Fifth Circuit in *Bruce v. Travelers Insurance Company, supra,* essentially has been rejected by courts that initially approved it. Respondents are correct. It is clear from *Hadrick v. Diaz, supra,* that Louisiana courts do not find corporate officer status or general corporate managerial responsibility the determinitive factors. That was recognized by the court in *Vega v. Southern Scrap Material Company, Inc.,* 517 F2d 254 (5th Cir 1975), which observed that the prevailing test under Louisiana law as to who qualified as an executive officer no longer turned on the *Bruce* formality of corporate bylaws or board of directors designation. The *Vega* court formulated a two-part analysis: (1) whether the purported executive officer was a corporate officer or worked directly under one; and (2) whether the officer participated in the formulation and execution of company policy with respect to an area of administrative responsibility. Applying that analysis, the court held that an iron and shipyard superintendent who had sole responsibility for a particular department and who reported to the corporate president was an executive officer. 517 F2d at 258.

Respondents further note that the Louisiana Court of Appeals in *Coco v. Winston Industries, Inc.,* 330 So2d 649 (La App 1975), *rev'd on other grounds* 341 So2d 332 (La 1976), emphasized that even the extensive list of factors enumerated in *Hadrick* was not meant to be exclusive and that other

considerations may be relevant in determining the parties' intentions. The *Coco* court concluded that an employe in charge of setting up eight regional mobile home manufacturing plants, an official in whom rested all ultimate authority in the parent corporation and a manager in charge of one plant were each executive officers within the meaning of a liability insurance policy. The court found that coverage in that case was designed to cover "key" employes; it listed as additional considerations the value of the employe's services to the employer, the ease with which the employe could be replaced, the importance of the employe's functions to the employer, and the extent to which the employe's ordinary functions tended to expose him to liability. 330 So2d at 660. *Accord: Green v. Wright,* 365 So2d 551 (La App 1978) (mine production foreman and shop foreman each found to be "key" employes and held to be executive officers); *see also Joseph v. Albarado,* 407 So2d 1277 (La App 1981); *Berry v. Aetna Casualty & Surety Company,* 240 So2d 243 (La App 1970), *cert den* 401 US 1005 (1971).

We observe preliminarily that the cases relied on by the parties arose in the context of Louisiana workers' compensation legislation, which provides the exclusive remedy against an employer but which permits actions against any third person responsible for the injury. *See* La R. S. § 23.1032; 23.1101. Fellow employes of a corporate employer are third parties under those provisions; the cases concern actions where the fellow employe arguably is covered by an employer's liability insurance policy which restricts coverage of employes to "executive officers." *See Vega v. Southern Scrap Material Company, Inc., supra,* 517 F2d at 256. Although those cases arose in a workers' compensation context, that fact does not make their underlying rationale any less applicable to the present case for determining whether an individual is an executive officer.[1] We turn then, in light of that guidance, to the construction to be given the term "executive officer" in

---

[1] We note that in *Carson v. State Indus. Acc. Comm.,* 152 Or 455, 54 P2d 109 (1936), the Oregon Supreme Court declined to rely on corporate records as determinative of the status of a purported corporate officer, holding that an employe who was an officer of a corporation in name only, but who had no voice in company policy, was not required to elect coverage under § 49-1816b, Oregon Code Supplement 1935, to be entitled to workers' compensation benefits.

the policy issued by Industrial Indemnity to Coast Distributors.

■ At the outset, we reject Industrial Indemnity's suggestion that we approve a narrow definition of "executive officer" tied to the corporate charter and bylaws and limited to *corporate* officers. Had that been Industrial Indemnity's intent, we believe it would have used that restrictive terminology. *See Berry v. Aetna Casualty & Surety Company, supra,* 240 So2d at 246. Rather, we find pertinent the various criteria set forth in *Hadrick v. Diaz, supra,* and *Vega v. Southern Scrap Material Company, Inc., supra,* and conclude that the term "executive officer" in this case must be construed to encompass persons satisfying such criteria. We wish to make clear, however, that we do not consider the criteria stated in those cases to be exclusive or that any one factor is a necessary prerequisite.

■ We also disagree with Industrial Indemnity's assertion that Duwe satisfies none of the *Hadrick v. Diaz* criteria. It is plain from the trial court's findings of fact that Duwe held a position of intermediate administrative responsibility in Coast Distributor's organization in that he had primary control and responsibility over the operation of one branch office of the company. As a branch manager, he met regularly with the general manager and with other branch managers to participate in the formulation and execution of corporate policy. He supervised all other employes in the branch and in specified situations had hiring and firing authority. He was empowered to enter into a variety of contracts on behalf of the corporation, and he could write company checks, albeit for limited, sales-related expenses. Although Duwe did not report directly to a corporate officer, his supervisor—the general manager—did, and we consider that a sufficiently close connection. We find adequate indicia of managerial responsibility for the affairs of Coast Distributors to permit the conclusion that he was an "executive officer" under the Industrial Indemnity policy; the trial court correctly so concluded.

Affirmed.