**LANDER et al. v. HORNBECK.**

No. 9139—Opinion Filed April 2, 1918.

Rehearing Denied March 18, 1919.

(179 Pac. 21.)

1. **Carriers—Passenger Elevator—Care Required.**

The owner of passenger elevators owes to the passengers using the same the highest degree of care, vigilance, and precaution.

2. **Landlord and Tenant — Passenger Elevator—Injury—Liability.**

Where the owner of a building leases different floors or rooms to different tenants, but retains control and management of the elevators in the building, he is responsible for injuries to tenants, their employes, and such other persons as may be lawfully using the same, where the injuries are due to the negligent management, operation, or use thereof.

3. **Control of Passenger Elevator.**

But in such case, if the elevator is in the absolute control of the tenant, the owner is not liable. The evidence examined, and held, same insufficient to sustain the contention that the elevator was in the absolute control of the tenant.

(Syllabus by Hooker, C.)

Error from District Court, Oklahoma County: Edward Dewes Oldfield, Judge.

Action by Adam Hornbeck, Jr., against Phillip Lander and another. Judgment for plaintiff, and defendants bring error. Affirmed.

J. S. Ross, for plaintiffs in error.

Lawrence Mills, for defendant in error.

Opinion by HOOKER, C. The plaintiffs in error are the duly qualified executors of the estate of one Randall, deceased, and at the time of the injury complained of here they had in their possession and under their control the real estate mentioned in this cause. The same was a five-story building which was being used and occupied by various tenants, and the fifth floor thereof was leased to one Mrs. Summers, who used two or three rooms for a dwelling, and in the balance she conducted a dance hall, which was so used on each evening of the week, save on Sundays.

All the tenants used a common stairway, which extended to the fifth floor, and an elevator, which was under control of the landlord and was operated by him from early morn to approximately 6 o'clock in the evening of each day of the week, save on Sundays, and the operator employed by the landlord generally took the elevator to the fifth floor in the evening when his hours were done, and left the same for the permissive use of Mrs. Summers for the rest of the day. She employed an elevator operator, and paid him from her own means, and this man employed by her went upon duty about 8 o'clock and remained on duty until approximately 12 o'clock when needed, and the power therefor was furnished by the landlord.

The doors to the entrances of this elevator did not automatically lock, and when locked could be easily unlocked from the outside. The elevator was as accessible to the use of the other tenants as to Mrs. Summers after the operator employed by the landlord had ceased his work, and the proof here shows it was used by other parties than her, but by whom it is not shown. And the evidence further establishes that little attention was paid to the elevator and its operation by any one after the day operator left it, but it was operated by any one who desired to use it.

Mrs. Summers was accustomed to use it for the comfort of her family and guests during the time no operators were in charge and on Sundays, and her use at all times may be said to have been permissive, and not contractual, as she could have been denied it and no rights of contract violated, and other tenants might have used it without interfering with her contractual rights.

On the Sunday evening in question the defendant in error visited Mrs. Summers in her apartment as her guest, and the elevator was brought by her to the first floor, and he was conducted to the floor upon which her apartment was located, and they left the elevator, and they, with others, spent some time visiting, and afterwards concluded to attend a show, and the defendant in error and three others left the apartment and started through a poorly lighted hall to the elevator, and when they reached the entrance to the elevator the door of which was open the defendant in error stepped in the shaft and fell to the first floor, and suffered serious and painful injuries, for which he seeks to recover damages here.

The petition alleges negligence upon the part of the defendants below in the opera-

tion of said elevator, substantially as stated here, and the answer was a general denial and a plea of contributory negligence. A trial resulted in a verdict for the defendant in error, and to reverse which an appeal is had here.

In 9 R. C. L. p. 1250, § 16, it is said:

"Where the owner of a building leases different floors or rooms to different tenants, but retains the control and management of an elevator in the building, he is responsible for injuries to tenants, their employes, and such other persons as may lawfully use the elevator. But if the tenant has the sole control and management of an elevator in a leased building, he, not the landlord, must give warning and look out for safety of the persons whom he invites to use the elevator. * * * "

And in section 17 thereof it is said:

"The landlord's duty extends to members of the tenant's family, guests, employes, and other persons passing to the apartments of the tenant by actual or implied invitation. * * * "

As to the degree of care the law imposes upon the owner of an elevator, the best reasoned authorities and a majority of them clearly say that he must use the highest degree of care, vigilance, and precaution, and as is well said in 9 R. C. L. p. 1249:

"Substantial reasons exist for this rule. The owner undertakes to carry passengers safely, and they accept this service in ignorance of the machinery and the appliances, as well as of their defects. Furthermore, the danger from negligence in the vertical propulsion of passengers is as great as, if not greater than, it is in the case of horizontal transportation. * * * "

In Olson v. Schultz, 67 Minn. 494, 70 N. W. 779, 36 L. R. A. 790, 64 Am. St. Rep. 437, it is said:

"In order to determine upon whom the liability rests in this action we may properly consider three points: (1) Who had control and possession of the elevator and the machinery necessarily connected with its operation, and the right to make constant repairs and keep it in perfect condition for the lessee's use? (2) Was it the duty of the lessor, under the covenants in the lease, to keep the elevator in constant repair and perfect condition, irrespective of the question whether he had notice of its being out of repair? In other words, was he liable for injury resulting from its being out of repair without his having knowledge of such defect? (3) Was Shotwell's notice of defective condition of the elevator sufficient to charge plaintiff with contributory negligence in not giving notice thereof to defendant?

"The only control or possession which plaintiff had over the elevator was that his operator might stand upon the platform while operating it in carrying plaintiff's merchandise. The other tenants had the same right. So far as appears from the record, the entire machinery connected with the operation of the elevator was under the management and in the possession and under the control of the defendant. The premises designated in the lease as those rented are 'the fourth floor of the four-story brick building known as being "Nos. 121 and 123, Washington Avenue North." ' The elevator was not leased to Olson, but only its mere use during such time as he needed it to convey his merchandise either up or down. At other times the North Star Boot & Shoe Company or the defendant had a right to its use. Olson's control of the elevator was a mere easement or right to transport his goods back and forth as his necessities occasionally required. It does not appear that the other tenant had any greater right in the elevator.

"As the defendant was the owner of the building and elevator, and the third story not rented, the presumption is that he had the absolute control and possession of the elevator at all times, subject only to the tenant's right of carrying goods as above indicated. Hence he had the legal right and the actual opportunity to make all necessary repairs and keep the elevator and its machinery in perfect condition, irrespective of the covenant and reserved privilege in the lease to do so. Olson had no right and was under no legal obligation to repair the elevator. He had no right to go to the basement or other stories for the purpose of repairing it, nor, as against other tenants, to stop its running for such purpose.

"His right to its use was not exclusive, but a right of passageway in common with the other tenant and the landlord, the latter having general control over the elevator; and we are of the opinion that the leasing of the fourth story of the building, under such circumstances, does not exonerate the defendant landlord from responsibility for the safe condition of the elevator under the specific covenant in the lease. It was put there for a specific purpose. The evidence shows the necessity for keeping it in this condition to enable the lessee to carry on his business, and to guard against injury to persons lawfully using it. And this covenant applies to the condition in which the landlord was to keep the elevator during the term of the lessee's lease. It did not concern the lessee as to the condition of the elevator at the date of the lease, June 2, 1891, but it was of vital importance to him as to its condition during the year for which he rented the premises, commencing July 1, 1891."

And in Henson v. Beckwith, 20 R. I.

165, 37 Atl. 702, 38 L. R. A. 716, 78 Am. St. Rep. 847, it is said:

"A lessor who is not in possession or control of an elevator well in a leased building which the tenant has covenanted to keep in repair is not liable for the death of a person who falls into it, while delivering goods to the tenant on the latter's invitation, although there was a dangerous defect between the elevator and the outer wall."

Applying the rule best supported by the authorities, we must hold that in cases of this character, where negligence is shown to exist that is the proximate cause of the injury, the landlord may be held liable unless the elevator is in the absolute control of the tenant.

Was this elevator on the day of the injury in the absolute control of the tenant within the purview of the authorities above cited? The trial court submitted this issue to the jury in a more favorable instruction than the plaintiffs in error were properly entitled to, and the jury said not. In this we think the verdict of the jury is supported by the evidence.

This permissive use by the tenant cannot mean absolute control. The landlord or any of the tenants might have used the same at any time that day, and not have violated any right of hers, and in fact under this evidence she might have been deprived of its use entirely and she would have had no just complaint.

Viewing the situation, it would be folly to assert that the agent of the landlord did not know the elevator was being used by the tenant in her business, for all the evidence is to the contrary, and the entire record bristles with passive negligence in the operation and management of this elevator. The permissive use of the elevator to any who desired was negligence.

The introduction of the city ordinance which it was charged that the defendants below had violated, was properly admitted. See St. L. & S. F. R. Co. v. Hart, 45 Okla. 659, 146 Pac. 436.

In the instant case the trial court did not instruct the jury that the violation of the ordinance was per se negligence, but merely informed the jury that it might consider that along with the other evidence in this case as fixing liability for the injury. The plaintiffs in error cannot complain of this. The instructions of the court upon the whole present the law of the case to the jury fairly and intelligently and within the rule announced in Newton v. Allen, 67 Okla. 73,

168 Pac. 1009, just decided by the court.

The damages are not such as would seem excessive or to have been given under the influence of passion or prejudice.

The young man was earning approximately $1,200 per year, and by reason of the injuries to his back and legs he is incapacitated from following his vocation, and is a cripple for life. His legs were both broken and his back severely injured. He will be deformed in his back all his days, and his legs permanently injured, one much shorter than it was and otherwise weakened. He suffered much pain, and his injuries are such that the amount of his damages will not compensate him for his loss.

Finding no error in the record prejudicial to the rights of plaintiffs in error, this cause is affirmed.

By the Court: It is so ordered.