Argued April 2, affirmed April 18, 1974

WESTERN LEASING, INC., *Appellant, v.* OCCI-
DENTAL FIRE & CASUALTY COMPANY OF
NORTH CAROLINA, *Respondent.*

521 P2d 352

*Alonzo P. Stiner,* Portland, argued the cause for appellant. With him on the briefs were Lovett, Stiner & Fasano, Portland.

*David P. Templeton,* Portland, argued the cause for respondent. With him on the brief were Lloyd B. Ericsson, John L. Langslet and Dusenbery, Martin, Bischoff & Templeton, Portland.

TONGUE, J.

This is an action against an insurance company to require it to pay money claimed by plaintiff to be payable to it as the "loss payee" under an endorsement on an insurance policy. The case was tried before the court without a jury. Plaintiff appeals from an adverse judgment. We affirm.

The insurance policy was issued to Ohio Properties of Portland, Oregon, and insured a fleet of trucks operated by it under lease from plaintiff. The policy included "collision or upset" coverage under which defendant agreed:

"* * * [T]o pay for direct and accidental loss of or damage to the [trucks] hereinafter called loss, caused by collision of the [truck] with another object or by upset of the [truck], * * *."

The insurance policy also included what is known as a "standard" loss payable endorsement under which defendant agreed that "loss or damage, if any, under the policy shall be payable" to plaintiff and that:

"* * * [T]his insurance as to the interest of

the bailment lessor, conditional vendor, mortgagee or other secured party or assignee of bailment lessor, conditional vendor, mortgagee or other secured party (herein called the lien-holder) *shall not be invalidated by any act or neglect of the lessee,* mortgagor, owner of the within described automobile or other debtor, nor by any change in the title or ownship of the property; * * * and provided, also, that in case the lessee, mortgagor, owner or other debtor shall neglect to pay any premium due under such policy the lien-holder shall, on demand, pay the same." (Emphasis added)

Plaintiff's claim involves damage to one of the trailers leased by Ohio Properties. A truck driver employed by it struck a low bridge in Iowa, damaging the top of the trailer. He then continued on toward Portland, but the trailer collapsed in Montana and apparently became a total loss.

Defendant tendered payment of $2,500 for damages to the trailer caused by striking the bridge ($3,000 less $500 deductible), but refused to pay for total loss of the trailer.

The trial court, after hearing the testimony, made findings of fact in which it found, among other things, that:

"4. * * * [The] driver * * * negligently caused damage to the roof of the trailer by causing it to strike a bridge.

"5. The damage resulting from the trailer striking the bridge totaled $3,000.
"* * * * * *

"7. After striking the bridge * * * [the driver] negligently and carelessly continued to pull the loaded trailer approximately 1,000 miles prior to the trailer collapsing.

"8. This subsequent operation caused the trailer to be totally destroyed in excess of $8,000."

The trial court then made the following conclusions of law:

"3. The sole and proximate cause of the damage to the trailer was the negligent operation of James W. Mathis causing the trailer to strike the bridge and continuing to drive it in a damaged condition.

"4. Plaintiff is entitled to receive only $2,500 representing the $3,000 damage caused by the trailer striking the bridge, less $500 deductible.

"5. The clause in the loss payable endorsement providing that the coverage 'shall not be invalidated by any act or neglect of the lessee, mortgagor or owner * * *' is not applicable to the consequential damage caused by driving the damaged unit with a full load and plaintiff is not entitled to recover for that additional damage."

Plaintiff contends that:

(1) A "standard" loss payable clause constitutes an independent insurance contract between the insurance company and the loss payee under which it is entitled to recover the full amount of its interest from the insurer regardless of any negligence by the named insured and free from any policy defenses as between the insurance company and the named insured, and

(2) As to plaintiff, as such a loss payee, the additional and increased damage incurred to this trailer as a result of the negligent conduct of the insured's driver in driving the damaged vehicle constituted "direct and accidental damage" for which it, as a loss payee, is entitled to recover to the same extent as if such additional damage had been caused by the acts of some third party.

■ In *Haskin et al v. Greene*, 205 Or 140, 286 P2d 128, 286 P2d 137 (1955), we recognized (at 151) that a "standard" loss payable clause (as distinct from a

"simple" or "open" loss payable clause), constitutes an independent contract between the insurance company and the loss payee. This is understandable because, under such a clause, the loss payee undertakes to pay the premium in the event that the named insured fails to do so, thus providing a separate consideration for such a contract. Cf. *Trans. Equip. Rentals v. Ore. Auto. Ins.*, 257 Or 288, 294, 478 P2d 620 (1970), apparently involving a "simple" or "open" loss payable clause.

■ Nevertheless, the coverage of the policy is not, as a result, extended to risks not otherwise covered by the policy. In other words, such a loss payee is entitled to payment for losses arising from risks that are covered by the policy, but is not, by the addition of a "standard" loss payable clause, entitled to payment for losses arising from risks that are not covered by the policy.

As stated in 5A Appleman, Insurance Law and Practice 292, § 3401 (1970 rev):

> "A distinction which is rather important to grasp is that the policy terms are themselves not nullified by a standard mortgage clause. It is, rather, that a new contract containing those provisions is made with the mortgagee personally; and the mortgagee is not bound by the mortgagor's contract which, while it may be identical in language, may be breached by the mortgagor's act. * * *"

Cf. 11 Couch on Insurance 2d 345, § 42:686 (1963).

It follows that the first question to be decided in such a case is whether the loss was one which arose from a risk that was covered by the terms of this insurance policy, in this case its provisions for "collision or upset coverage." Needless to say, this depends upon

the facts of the case. It also depends, in this case, upon the findings of fact by the trial court.

Under the policy provisions for "collision or upset" coverage, the insurance company agreed to pay for "direct and accidental loss or damage" to the trailer "caused by collision with another object."

The conduct of the driver of a vehicle subsequent to a collision may result in further damage to the vehicle which may or may not be covered by the "collision" coverage of an automobile insurance policy. Whether or not the subsequent damage may be covered in such a case may depend upon whether such damage can be said to have been "caused" by the collision. This, in turn, may depend upon the facts of the case. See 11 Couch, *supra,* 52, § 42:206. Cf. Annot., 23 ALR2d 389 (1952).

In this case, the trial court made an express findings of fact that "the damage resulting from the trailer striking the bridge [i.e., from the "collision"] totaled $3,000" and that it was the "subsequent operation" of the truck and trailer that "caused the trailer to be totally destroyed."

Plaintiff has cited numerous cases in which, under quite different facts, recovery by loss payees was held to be proper under "standard" loss payee endorsements and under the provisions of other insurance policies. We need not decide in this case how far, under different facts, the "loss payable" clause may extend protection to the loss payee against negligent conduct of the insured, or for what types of negligent conduct.[*]

---

[*] A few examples will illustrate some of the complications of this problem.

(a) If, after the collision with the bridge, the driver had negli-

■ Because, however, the trial court made a finding of fact in this case that the subsequent collapse of this trailer was not caused by the collision and because, in our view, there was substantial evidence to support such a finding, we hold that such damage was not within the provisions of this insurance policy for "collision" coverage.[9] It follows, for reasons previously stated, that no recovery can be made by the plaintiff as the loss payee.

We therefore affirm the judgment of the trial court.

gently tried to drive the truck off the highway and to drive it one block to a garage for repairs and the trailer had collapsed before he could reach the garage, it may be contended that additional damage resulting from the collapse of the trailer was "direct or accidental" damage "caused by collision," so as to be within the "collision" coverage of the policy.

(b) If, after the collision with the bridge, the driver had negligently left the truck on the highway and another truck had collided with it, it may be contended that additional damage resulting from the second collision was "direct or accidental" damage "caused by collision," so as to be within the "collision" coverage of the policy as between the insurance company and the loss payee, regardless of whether the employer of the driver, as the named insured, could recover under such facts.

(c) If the trailer was totally destroyed by the collision and the lessee of the truck negligently failed to make proof of loss as required by the terms of the policy, it may be contended that such negligence would not bar recovery by the loss payee because the total loss was otherwise within the "collision" coverage of the policy.

[9] Neither party in this case discusses the question whether, in such a case, the term "cause" or "causation" is to be considered in the "tort sense" or in what has been referred to as the "contract sense" of that term, if there is any proper difference between the two. See Bruener v. Twin City Fire Ins. Co., 37 Wash 2d 181, 222 P2d 833, 23 ALR2d 385 (1950).