**Edythe SEAY, Appellant,**

v.

**GENERAL ELEVATOR COMPANY, an Oklahoma corporation, and Otis Elevator Company, a New Jersey Corporation, Appellees.**

**No. 44395.**

Supreme Court of Oklahoma.

May 21, 1974.

Robert E. Shelton, Savage, Gibson, Benefield & Shelton, Richard L. Bohanon, Bohanon & Barth, Oklahoma City, for appellant.

Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, for appellee, Gen. Elevator Co.

Cook & O'Toole, Oklahoma City, for appellee, Otis Elevator Co.

LAVENDER, Justice:

This appeal involves an action for damages arising from personal injuries suffered when plaintiff fell as she exited from an automatic elevator in a federal court and office building in Oklahoma City where she was employed. She said in substance that her fall was caused by the outer (hallway) center-closing doors of the elevator closing in an unduly fast manner on her right heel—the last part of her body crossing the threshold. She was one of two persons on the elevator and the other person preceded her from the elevator. She had not attempted to hold the doors apart by pushing upon the rubber leading edge of either of the center-closing elevator doors (as distinguished from the elevator's outer hallway doors) which contained a safety device for opening the doors when the leading edge was pressed, although others had done this for her in the past. She had not actually known that it was the rubber edge on the inside door that was used to hold the doors open. No such device was on the elevator's outer hallway doors, and evidence indicated that outer elevator hallway doors manufactured in the United States do not have safety devices. However, the inner and outer doors operate in conjunction. The inner doors were also equipped with photo-electric cells that kept them apart when their light beam was broken. Each time the light beam was interrupted the stand-open time of the elevator hallway doors began anew. There was also a stop button on the elevator that, when pushed, would stop the doors from closing. The plaintiff never used the stop button.

Plaintiff was 63 years of age, had been a secretary for many years, had a pre-existing arthritic condition, had ridden the elevator or one of the other similiar automatic elevators in the bank of four elevators many times since the opening of the building, the elevators having been installed in 1961. She had also suffered a previous encounter with the doors, or similar ones in the same bank of elevators with no injury. This encounter had been when she sought to step onto a crowded elevator.

The elevator was manufactured and installed by defendant Otis Elevator Company and was maintained and serviced by defendant General Elevator Company pursuant to a contract with the General Services Administration (G.S.A.), an agency of the U.S. Government which owned the building. Technicians from the regional office of G.S.A. had made general adjustments to the elevators during the period of general elevator company's contract.

Plaintiff alleged in effect a cause of action in manufacturers product liability against defendant Otis Elevator Company when she alleged that Otis failed to design, manufacture and install the elevator in a manner whereby it would be reasonably fit for the purposes for which it was to be used. Plaintiff's cause of action against defendant General Elevator Company was based on alleged negligence of that defendant in failing to maintain the elevator over which it had exclusive control and custody in a safe condition.

Defendant Otis Elevator denied fault in design, manufacture, and installation of the elevator and alleged negligence of plaintiff as the proximate or contributing cause of the accident and resulting injury in catching the heel of her shoe in the opening between the floor of the elevator and floor of the building and falling while attempting to free the heel and shoe. Defendant further alleged that plaintiff failed to use the means at hand to prevent the door from closing by placing her hand on the safety edge of the door.

Defendant General Elevator alleged negligence and contributory negligence of plaintiff in substance as had defendant Otis Elevator.

The issues are the correct application of the law of manufacturers' products liability as to defendant Otis Elevator Company, and, as to defendant General Elevator

Company, whether the jury verdict was not sustained by the evidence and is contrary to law, and/or was rendered after prejudicially erroneous instructions, particularly in regard to the doctrine of res ipsa loquitur. For reasons hereinafter stated we find that the demurrer by defendant Otis Elevator Company was properly sustained, and that, as to defendant General Elevator the jury verdict for defendant was sustained by the evidence and is not contrary to law, and that the instructions were not prejudicially erroneous.

■ With regard to plaintiff's action in manufacturer's product liability against Otis Elevator Company, we adopted in Kirkland v. General Motors Corp., No. 45,016, promulgated April 23, 1974, and which appears in 521 P.2d 353, the description of the cause of action in products liability as contained in the Restatement of Torts, Second Series, § 402A, the pertinent portion of which is:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applied although (a) the seller has exercised all possible care in the preparation and sale of his products, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." Restatement at 347, 348.

We also adopted the definition of "unreasonably dangerous" contained in comment g to said § 402A, together with the parenthetical addition made by us, as follows:

"The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it (or who uses it) with the ordinary knowledge common to the community as to its characteristics."

Under the above it was incumbent upon plaintiff to establish as against Otis Elevator Company that the absence of a separate and additional device on the outer hallway doors of the elevator was a design which was unreasonably dangerous to the plaintiff when she attempted to use the elevator in the way it was intended to be used. We are of the view plaintiff's evidence failed to establish a cause of action in products liability against Otis Elevator Company. Under these circumstances the trial court properly sustained the demurrer. Fletcher v. Meadow Gold Co. (1970), Okl., 472 P.2d 885, citing Howell v. Olson (1969), 452 P. 2d 768 wherein a syllabus succinctly states the established rule that a demurrer to the evidence admits all facts fairly or reasonably inferable or deducible from the adverse party's evidence, and where there is any controverted question of material fact a demurrer to plaintiff's evidence should not be sustained.

Regarding the action against the General Elevator Company, as indicated, that company had a contract with General Services Administration to maintain and service the elevators. Plaintiff believed that the doors operated too fast, and she had known this since she first rode the elevators. She thought that they were erratic and that on the occasion when she was injured the doors closed much faster than they usually did. She believed that, there being only two persons on the elevator, she should have been able to have gotten off the elevator with safety. She also believed that the doors didn't stay open long enough and started closing sooner than they should have.

The timing on the elevator doors was set according to General Services Administration requirements, and it determined the "stand-open" time for the doors were preset, although this was done in conference with General Elevator. On April 26th, some days prior to plaintiff's accident on Monday, May 13th, 1968, the stand-open

time on the elevator had been extended one second because of traffic congestion in the basement. This was at the direction of G. S.A., and the work was done by a serviceman of General Elevator. The building manager determined the speed with which the doors closed.

The elevator was functioning as it was supposed to when checked by General Elevator's serviceman on the Friday preceding the Monday accident which occurred when plaintiff was returning from lunch. It was checked for malfunctions at about 1:45 P. M. thereafter by General Elevator's serviceman in the company of the assistant building manager for G.S.A. and the security guard supervisor. No malfunctions were found. Later on the same day the serviceman timed the doors with a stop watch. No adjustments of any kind were made to the elevator and it was put back in service. On May 24th the elevator was checked by a regional G.S.A. elevator inspector, the checks including the door stand-open time, which was 7.1 seconds from a button call from the hallway and 3.9 seconds from within the elevator. This variance was normal. There had been no change or adjustment of the elevator during the interval between inspections. The G.S.A. inspector did not recommend or require a change of these times. He found door closing pressure of 24 pounds which was well below maximum pressure allowed by a code used by G.S.A.

No malfunctions of the elevator were found during the inspections, but they were possible. Any door-closing time malfunctions that would have made the doors travel faster in closing would have been caused by a "short" or a bad condenser. The doors would have continued their faster rate until repaired.

With this posture of the evidence plaintiff complains that the trial court erred in its jury instruction #4 that the expression "closed in an unusual manner," as used in the instructions was only relative to the rapidity with which the doors closed, the court saying that this did not mean the time the door was to remain open before commencing the closing process. Instruction #8 refers to the elevator being ". . . closed in a manner which was unusual to that door and caught plaintiff's foot causing her to fall, . . .," and then speaks further of obligations of plaintiff and defendant in the realm of using ordinary care, that of defendant being ordinary care, commensurate with the danger involved, in the inspection, repair, or maintenance of the elevator. Instruction #6, in dealing with the doctrine of res ipsa loquitur, although not so named, gives a similiar definition of defendant's duty. Since the rapidity with which the door closed was the crux of any indication of negligence by defendant that was the proximate cause of plaintiff's injury, the jury's attention was properly directed to it if proof of negligence was a burden of plaintiff.

Plaintiff says in its brief, however, that since its case was stated on a theory of res ipsa loquitur, that by so instructing, the jury was required "to find some act of negligence (by defendant) before the rule of res ipsa loquitur could be applied and limited what it could find to be negligence only in the manner stated," i. e., the unusual rapidity of the door closing. Plaintiff says that she was thereby improperly required to prove *what* occurred, whereas her burden should have been only that the accident did occur and that ordinarily such accidents do not occur but for negligence. Stated differently, plaintiff says that by the court's instruction ". . . the jury was required to find that the doors closed too fast [in order for plaintiff to recover], a much more difficult burden than showing that such actions ordinarily do not happen if those who have the management use the proper care." Plaintiff further contends that evidence of timing of the doors before and after the accident was immaterial ". . . since she admittedly proved the occurrence of the accident."

In determining this matter we must first see whether this is a res ipsa loquitur case. In Briscoe, Appellant v. Oklahoma Natural Gas Co., Appellee, No. 44,109, decided March 13, 1973, Okl., 509 P.2d 126,

this court reiterated a previous holding on the doctrine of "res ipsa loquitur," saying that it meant that:

". . . whenever a thing which produced the injury is shown to have been under the management and control of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been used, the fact of the happening of the accident creates the presumption that the accident and injury resulted from the negligence of defendant.

"Before the doctrine of res ipsa loquitur may be invoked to justify the inference of negligence on the part of the defendant, the plaintiff must prove what caused the damage, *and that the 'thing' causing said damage was under the control and management of the defendant or his servants*, since the doctrine does not go to the extent of implying that one may, from the mere fact of the injury, infer what physical acts produced the injury. (case citation)." (Emphasis supplied)

The doctrine has been applied to automatic elevator injury cases (First National Bank of Arizona v. Otis Elevator Co. (1965), 2 Ariz.App. 80, 406 P.2d 430; Otis Elevator Co. v. Seale (1964), 5 Cir., 334 F.2d 928, a case arising in Louisiana; 6 A.L.R.2d 396, 19 A.L.R.2d 278) but this is not conclusive, and this case must be determined on its own facts and by the foregoing standard.

The Latin phrase, "res ipsa loquitur," means that the thing, or more exactly in law—the peculiar situation—speaks for itself. It concerns an inference of negligence by defendant as a legitimate deduction of fact from the fundamental facts established by direct evidence, upon the theory that common experience of men tells one that, in such a situation and in the ordinary course of events, the injury or damage complained of by plaintiff would not have occurred in the absence of negligence by defendant. St. John's Hospital & School of Nursing v. Chapman (1967), Okl., 434 P.2d 160. The thing, here, the

elevator, was not under the exclusive control of defendant, as required for application of the doctrine (Briscoe v. Oklahoma Natural Gas Co., supra) in the situation of the accident. It must be remembered that this is not a situation where the doctrine has been applied, such as, for example, an entry onto an elevator by an elderly woman who had gone into a bank building to transact business and was knocked down by a malfunctioning door when she proceeded to enter the elevator after two men had stepped off. First National Bank of Arizona v. Otis Elevator Co. (1965), 2 Ariz.App. 80, 406 P.2d 430. This is the case of a secretary, about 63 years of age and at least somewhat arthritic, acquainted with the door opening qualities of the elevator in the building in which she worked, had been squeezed by them or other similar doors in that bank of elevators, knew that the doors could be held open by placing a hand upon them, had seen this done during her frequent use of the elevators, and yet did not employ the means at hand to control the door prior and during her exit behind the one other person in the elevator. The exclusive control of the elevator in this situation was not in defendant, and the standard for application of the doctrine (Briscoe v. Oklahoma Natural Gas, supra) was not met. As has been many times said, the doctrine is a rule of evidence. But, "It takes more than the mere happening of an accident to set the rules in operation. It must be shown that the act was of such a character, as, in the light of ordinary experience, it is without explanation, except on the theory of negligence [by defendant]." Mohawk Drilling Co. v. McCullough Tool Co. (1959), 10 Cir., 271 F.2d 627, quoting from Canada Dry Ginger Ale v. Fisher (1949), 201 Okl. 81, 201 P. 2d 245, quoting from Carter Oil Co. v. Independent Torpedo Co. (1924), 107 Okl. 209, 232 P. 419. In our view, plaintiff did not meet the "control" burden of the res ipsa loquitur and the plaintiff was not entitled to the aid of the doctrine in proving negligence of defendant.

 The doctrine of res ipsa loquitur being for plaintiff's benefit, the instruction

thereon by the court, although not in the form that plaintiff desired, could only have benefited plaintiff and was not prejudicial to her. An examination of the entire record convinces us that the harmless error doctrine is applicable. 20 O.S.1971, § 3001. This is because an instruction, although not required by the proof will not warrant reversal of the case unless it is apparent that such instruction probably misled the jury. Weaver v. Hoster (1969), Okl., 459 P.2d 614. Nor will a judgment be disturbed on appeal because of an erroneous instruction, unless it appears reasonably certain that the jury was misled thereby, resulting in a miscarriage of justice. Megert v. Bauman (1952), 206 Okl. 651, 246 P.2d 355; Tucker v. Colorado Indoor Trap Shoot, Inc. (1970), Okl., 471 P.2d 912. The salient test of reversible error in instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered if the alleged errors had not occurred. Commonwealth Life Insurance Co. v. Gay (1961), Okl., 365 P.2d 149; quoted in Missouri-Kansas-Texas Railroad Co. v. Harper (1970), Okl., 468 P.2d 1014, and other cases. The instructions on res ipsa loquitur were not such that the jury would have rendered a different verdict because of them than it otherwise would have rendered.

■ Plaintiff also claims error in the instructions pertaining to contributory negligence, its position being, as we understand it, that there was no issue of contributory negligence. On the basis of the evidence set out, supra, we believe that such an instruction was necessary, for as we said in Briscoe v. Oklahoma Natural Gas Co., supra, we held in Bagley v. Blue Flame Propane Company, Okl., 418 P.2d 333, that where contributory negligence is properly plead, as it was in the instant case, and there is evidence tending to prove it in any degree, as it was here, it is the duty of the trial court to submit it as a question of fact for the jury to determine. The trial court made no error in so instructing.

■ Other matters urged by the plaintiff have been considered, including its view that both defendants owed a high degree of care to persons such as plaintiff. We have previously noted the correct requirement in this regard as to manufacturers' products liability, and are conversant with the case bases for plaintiff's position and the historical antecedent basis for those cases, which is generally, that the owner of an elevator owes the same duty to the public as a common carrier. Lander v. Hornbeck (1918), 74 Okl. 239, 179 P. 21; First National Bank of Arizona v. Otis Elevator Co., supra; Champagne v. A. Hamburger & Sons (1915), 169 Cal. 683, 147 P. 954; Treadwell v. Whittier, et al. (1889), 80 Cal. 574, 22 P. 266; Otis Elevator Co. v. Seale, supra. As to General Elevator Company, the court was instructed that General Elevator's duty was to exercise ordinary care, commensurate with the danger, to inspect, repair, and maintain the elevator in a safe operating condition. We do not view this as inconsistent, for example, with the carrier law as applied to elevators in Otis Elevator Company v. Seale, supra, the Louisiana case in Federal court, wherein it was stated:

> " 'The law states that while the owner of a passenger elevator operated in a business building for carrying passengers up and down may not be a carrier of passengers in the sense that he is bound to serve the public, yet this duty as to protecting the passengers in his elevator from danger is the same as that applicable for the carrier of passengers by other means, and he is bound to do all that human care, vigilance and foresight can reasonably suggest under the circumstances and, in view of the character of the mode of conveyance adopted, to guard against accidents and injuries resulting therefrom; and a failure to exercise such reasonable care will constitute negligence rendering him liable.' "

General Elevator was, of course, not the owner, but it had a contract responsibility. We find no reversible error with the instructions that the "carrier" here had the duty to exercise ordinary care, commensu-

rate with the danger, to inspect, repair, and maintain the elevator in a safe operating condition.

Instructions to the jury must be considered together as a whole, and if, when so considered, they properly state the applicable law, they are sufficient. Montgomery Ward & Co. v. Oldham (1964), Okl., 391 P.2d 283. With the observations as aforesaid, the instructions here state the applicable law.

The syllabus statement of Hardware Mutual Casualty Company v. Baker (1968), Okl., 445 P.2d 800, is appropriate: "Absent [prejudicial] errors of law, a judgment entered on a jury verdict will not be reversed if supported by any competent evidence." We have considered all matters urged by plaintiff, find no prejudicial error, and find competent evidence to support the jury verdict. The judgment of the Court of Appeals is vacated. The judgment of the trial court is affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, HODGES, BARNES, SIMMS and DOOLIN, JJ., concur.