**Ella SMITH, Appellee,**

v.

**Garrison E. MUNGER, Jr., as Administrator with Will Annexed of G. E. Munger, Deceased, and Ruth Virginia Munger, Appellants.**

**No. 46294.**

Court of Appeals of Oklahoma, Division No. 2.

Sept. 24, 1974.

Certiorari Denied March 4, 1975.

Released for Publication by Order of Court of Appeals March 6, 1975.

Howard K. Berry, Sr., Berry & Berry, Oklahoma City, for appellee.

Ben A. Goff, Rhodes, Hieronymus, Holloway & Wilson, Oklahoma City, for appellants.

· NEPTUNE, Judge.

On the 20th of March, 1971, plaintiff, a 42-year-old secretary for a tenant in the office building of defendants known as Broadway Tower, was severely injured while attempting to board a passenger elevator. One of the two passenger elevator cars serving the Tower was stopped on the 11th floor level and the doors were opened by the operator for plaintiff and her employer to enter. As plaintiff stepped forward across the threshold, the elevator lurched upward about 18 inches, throwing plaintiff down to the car floor with her body in the car and her legs outside the car through the doors. After hesitating momentarily, the elevator lurched upward again. Plaintiff's legs and feet were crushed first between the outside elevator doors and then between the floor of the rising elevator and the shaft wall immediately above.

A few months before the accident, a fire in the basement of the building had damaged the elevator involved in the accident. Otis Elevator Company was called to repair ·it, pursuant to a work order included in the evidence. Repair and rewiring under the work order was completed on the 8th of January, 1971, at which time the elevator was restored to service.

Plaintiff sought to state a concurrent cause of action against Broadway Tower

and Otis. Broadway Tower was charged with failure to inspect commensurate with knowledge of the damaging effect of heat, smoke and water on the mechanism of elevator controls; failure to exercise care in repairing after the fire; failure to provide adequate safety devices against movement when the doors were open; and failure to warn of the existing defective and dangerous condition. Plaintiff also alleged negligence generally in furnishing an elevator for use by passengers which was mechanically and structurally defective. Otis was charged with failure to inspect commensurate with its knowledge of the damaging effect of heat, smoke and water; failure to replace parts necessary for reasonably safe restoration to passenger service; and failure to warn of the defective condition.

The record shows that the case was submitted to the jury as to Broadway Tower under res ipsa loquitur and as to Otis under negligent breach of implied warranty under products liability. The jury found in favor of plaintiff as against Broadway Tower awarding damages of $150,000, but exonerated Otis. Plaintiff did not attack by new trial motion or petition in error Otis' verdict and judgment. Broadway Tower filed motion for new trial which was overruled, and from that order appealed. There is no complaint of an excessive verdict, nor is it asserted that the verdict was not supported by sufficient evidence.

Appellant Broadway Tower advances two propositions of error. The first complains that giving instructions imposing upon appellant the "highest degree of care" is reversible error. The second complains of the admission of alleged hearsay testimony.

Appellant in Proposition One complains:

"The trial court erred in giving Instructions No. 8 and 10 which placed on Broadway Tower the highest degree of care in the maintenance and operation of its elevator."

Instruction No. 8 told the jury:

"You are instructed that the defendant owners of the Broadway Tower Building, with notice of damage to its passenger elevator by fire, owed the duty of exercising the utmost care in making repairs before permitting it to be restored to passenger service. This duty of care was not delegable, in nature, and the defendant owner would not be relieved of its liability thereunder by employing the defendant, Otis Elevator Company, or any other independent contractor, to repair and inspect said elevator."

By Instruction No. 10 the jury was told:

"As stated in these instructions, the mere happening of an accident does not create a presumption of negligence as to any party. But where a passenger conveyance such as an electrically powered elevator is exclusively under the control of its owner and an accident occurs which is of a nature that in the ordinary course of affairs it would not have occurred if proper care had been exercised, it will be presumed that the owner having the responsibility for the inspection, repair and maintenance of the elevator was negligent. You are instructed, however, that such presumption of negligence may be overcome by a preponderance of the evidence which would show, to your satisfaction, that the defendant owner was not guilty of negligence.

"In this connection, you are instructed that the defendant, Broadway Tower Building, was the owner and had the exclusive control of the passenger elevator involved in this action, and owed the duty of exercising the highest degree of care for the inspection, repair and maintenance of said elevator; that the presumption of negligence, as defined herein, exists against said defendant and in favor of plaintiff. The burden of proof, as the same has been defined herein, is upon the defendant, Broadway Tower, to prove that it was not guilty of negligence."

Appellant requested the following instruction which was refused:

"One owning a building, and operating an elevator therein, is not an insurer of the safety of the passengers, but is under a duty of exercising ordinary, or reason-

able care in maintenance of the elevator, and is not responsible for his negligence and that of his employees for injuries to the employees of tenants of the building."

■ The instructions given were proper as to the degree of care under the authority of cases from various appellate courts including the Supreme Court of Oklahoma. Lander v. Hornbeck, 74 Okl. 239, 179 P. 21 (1918). In the cited case, the syllabus by the court states:

"The owner of passenger elevators owes to the passengers using the same the highest degree of care, vigilance, and precaution."

The language of the court from which comes the above syllabus states:

"As to the degree of care the law imposes upon the owner of an elevator, the best reasoned authorities and a majority of them clearly say that he must use the highest degree of care, vigilance, and precaution, and as is well said in 9 R.C. L. p. 1249:

'Substantial reasons exist for this rule. The owner undertakes to carry passengers safely, and they accept this service in ignorance of the machinery and the appliances, as well as their defects. Furthermore, the danger from negligence in the vertical propulsion of passengers is as great as, if not greater than, it is in the case of horizontal transportation. . . .'"

■■ Appellant nevertheless urges that the case of Geesing v. Pendergrass, Okl., 417 P.2d 322 (1966), sets out the applicable rule requiring only ordinary care. The syllabus by the court in that case states:

"Where the landlord retains possession and control of a portion of the leased premises for use in common by different tenants, he has the duty to use ordinary care to maintain such portion . . . in a safe condition . . . ."

The Geesing holding is an extension of case law construing the Oklahoma statutory provisions of immunity of a landlord to a tenant. The remedies provided by 41 O.

S.1971 §§ 31 and 32 are exclusive, and a landlord has no liability to a tenant in a tort action for damages resulting from a defect in the premises which are under the control of the tenant. Lavery v. Brigance, 122 Okl. 31, 242 P. 239 (1925). But the statute does not apply in cases where business buildings are involved. Price v. MacThwaite Oil & Gas Co., 177 Okl. 495, 61 P.2d 177 (1936). It applies only to residential property where the possession and control are exclusively in the tenant. Arnold v. Walters, 203 Okl. 503, 224 P.2d 261 (1950).

Clearly, the Geesing case has its foundation in these sections of the statute. And it states the rule applicable to its particular facts. But it provides no basis for us to avoid applying the rules stated in the Lander case, the facts of which dealt with injury to the guest of a tenant involved in an elevator accident. *Lander* also pointed out that the landlord's duty "extends to members of the tenant's family, guests, employes, and other persons passing to the apartments of the tenant." The facts are sufficiently dissimilar to effect a reconciliation of conflicting social policies which the law embodies because they emerge differently balanced in the two cases. Instrumentalities such as elevators and escalators are logically put upon a different footing than steps, stairs and floors. "These are not simple everyday devices the average person operates or understands, except superficially. They are moving machines that may, because of neglect, get out of repair and suddenly cause serious injury to one lawfully upon them who would have no prior notice or knowledge of a defect and therefore of the immediate risk he may be taking." Mattox v. C. R. Anthony Co., 326 S.W.2d 740 (Tex.Civ.App.1959). In the cited case, the standard of care required was the same as that for carriers of passengers. The textbooks recognize numerous authorities holding that the owner and operator of an elevator is under an analogous duty of care as a common carrier. 26 Am.Jur.2d Elevators and Escalators § 5 (1966); 13 C.J.S. Carriers § 687 (1939). The instructions holding appellant

to the highest degree of care were not erroneous. Lander v. Hornbeck, supra.

Appellant's second proposition urges that the testimony of witnesses concerning conversations they had with the elevator operator were inadmissible as hearsay and are not within the res gestae exception under which the trial court admitted them.

The elevator operator did not testify. But some of her out-of-court utterances were offered from the testimony of two witnesses who testified by deposition. Witness Van Scoy, a young man of 17 at the time, who was aboard the elevator when the accident occurred, besides describing the accident, testified about his conversation with the operator while he was on the elevator just prior to the accident. The interrogation and answers went like this:

"Q. Then, while you ware talking to her [the elevator operator, Carol Ann] at the lobby level, the buzzer rang and she went up to the eleventh floor and you remained on the elevator?

"A. Yes, I started to get off and she said, 'No, stay on.' I just stood back in the back of the elevator and didn't say anything.

"Q. While you and Carol Ann were talking that day, were you ever talking about the elevator or the way the elevator operated?

.      .      .      .      .      .

"A. Yes. She said that the elevator operated—was 'operating today with the doors open,' but it wasn't supposed to.

"Q. Do you know how she happened to bring that subject up while you were talking to her?

"A. When we started to go up to the fifth floor, she must have forgotten about it and started—pulled the lever down and the thing went up with the doors open. That is when she said it."

The other testimony complained about is that of witness Marshall, one of the building janitors, as follows:

"Q. Had Carol Ann said anything about it operating in such a way that she could move it with the doors open?

"A. If I remember right, she said that.

"Q. What did she say about that?

"A. She said she could run it with the wire door open.

"Q. And that was on Saturday, the same day of the accident?

"A. Yeah.

"Q. Had she said anything about it before this Saturday?

"A. I don't remember right now.

"Q. Well, when Mr. Galusha came, what did you notice that he did or what did you do with Mr. Galusha?

"A. Well, I got on the elevator with him and we tried it with the doors open and it moved.    .    .    .·

.      .      .      .      .      .

"Q. And would it go up with the door open?

"A. Yes.

"Q. That was after the woman had been taken away in the ambulance? Is that right?

"A. Yeah.

Cross examination by appellant's co-defendant and further redirect developed that the statement of the operator, Carol Ann, that "it would go with the door open" was made both before and after the accident.

■■ The trial court admitted the statements as res gestae exceptions to the hearsay rule of exclusion. The Oklahoma Supreme Court has often defined the exception. It holds that an out-of-court utterance to be admissible within the res gestae exception requires (a) that the utterance be made at or near the time of the occurrence; (b) that the utterance be made spontaneously; and (c) that it be

provided or influenced by the happening of an accident itself so as to become a part thereof. Sand Springs Ry. v. Piggee, 196 Okl. 136, 163 P.2d 545 (1945). Under this definition, we think not all of the challenged statements may be correctly admitted as res gestae. However, we think all are admissible as being outside the hearsay exclusion rule by virtue of the facts and circumstances in this case.

■ Hearsay is variously defined and it is acknowledged that all the definitions are subject to some criticism because of the complexity of the subject and the necessity to make any definition brief and understandable. Elemental in the best of the definitions is that hearsay is evidence of an out-of-court statement being offered to show the truth of matters asserted therein, "resting for its value upon the credibility of the out-of-court asserter." Shinn v. Francis, Okl., 404 P.2d 1017 (1965). McCormick on Evidence 584 et seq. (2d ed. 1972).

■ Outside the ambit of hearsay are those utterances to show the state of mind evincing knowledge, notice or awareness of some fact which is established by other evidence in the case. Appellee points out that the bad order condition of the elevator was established by other direct evidence and that the challenged evidence was offered to show that the owner-employer had knowledge of the existence of the condition, and on that basis is admissible, citing Palacine Oil Co. v. Philpot, 144 Okl. 123, 289 P. 281 (1930). In that case, the sixth syllabus states:

"Statements of employee after accident are inadmissible to prove employer's negligence caused accident; employee's statements after accident are admissible to show employer had knowledge of conditions, indicated by admissions, where other evidence authorized finding conditions actually existed."

In McCormick on Evidence (2d ed. 1972), under the subparagraph "Knowledge" in a paragraph entitled "Out-of-Court Utterances Which Are Not Hearsay," the author at pages 591 and 592 summarizes this view:

"Thus if evidence is given that the operator of a machine stated before the accident sued on, that the brakes were defective, this would be admissible as evidence tending to show circumstantially that he knew of the defective condition, if it was defective. To show the latter fact, other evidence is relied on. Proof that one talks about a matter demonstrates on its face that he was conscious or aware of it, and his veracity simply does not enter into the situation. Even though the statement is assertive as to the existence of knowledge, 'I know the brakes are bad,' and is offered to show he did know it, it can still rest on the nonhearsay ground that (bad brakes having been otherwise shown) his remark tends to show that if the brakes were bad he was aware of it. The existence of knowledge is apparent without any reliance on his veracity."

■ The statements complained about made by the elevator operator before the accident would establish that she knew that "the elevator runs with the door open." It was admissible because the door malfunction was shown by other evidence. Witness Van Scoy testified directly that the elevator did so run while he was in it immediately before the accident—at the very time that the operator's statement was being made. Witness Marshall testified that immediately after the accident he and Galusha (the building superintendent) determined that it would run with the door open. Undoubtedly, the open condition of the door while Van Scoy was on the elevator as it was ascending prompted the operator to make the statement to him. This evidence shows knowledge of the existence of the condition before the accident. It is clear that the fact provable by the statement—scope of operator's knowledge—does not depend upon the veracity of the declarant but on that of the witness and is therefore not within the definition of hearsay

██ The statement of similar import purportedly made by the elevator operator after the accident, in the circumstances shown in the record, was admissible under either the res gestae exception to the hearsay exclusion or under the premise that its value did not depend upon the veracity of the declarant because of the direct eye witness evidence of Van Scoy and Marshall confirming that the bad condition obtained.

██ The trial court's decision admitting the evidence was correct though the reason given was not. A correct decision arrived at on the basis of an incorrect theory or for wrong reasons will not be reversed on appeal. Fuller v. Rahill, Okl., 496 P.2d 785 (1972).

Affirmed.

BRIGHTMIRE, P. J., and BACON, J., concur.