Bill HENSLEE, Appellant,

v.

Vicki MONKS and Griffin Television, Inc., an Oklahoma Corporation, Appellees.

No. 49875.

Supreme Court of Oklahoma.

Nov. 1, 1977.

Fielding D. Haas, Norman, for appellant.

Roy J. Davis, Robert D. Nelon, Andrews, Mosburg, Davis, Elam, Legg & Bixler, Oklahoma City, J. David Rambo, Norman, for appellees.

LAVENDER, Vice Chief Justice:

Bill Henslee (Henslee), appellant, brought suit for libel and slander against Griffin Television, Inc. (television station), and its news reporter, Vicki Monks (Monks), appellees. The alleged defamatory statements were contained in television newscasts that included prepared scripts by Monks. Trial was to a jury with a verdict returned for defendants, the television station and its reporter, Monks. Plaintiff Henslee appeals.

Televised newscast included scripts prepared and broadcast by Monks resulting from an investigation by her of the hiring of illegal aliens by those called "ranchers" near Norman, Oklahoma. Henslee was the Norman police chief. The newscast called the hiring a felony. Statements were made that Henslee, as police chief, refused to allow additional arrest of illegal aliens due to an agreement or "fix" between Henslee and some ranchers; that action by Henslee could possibly result in the obstruction of justice.

With Henslee a police chief and a public official, both parties agree the New York

Times rule[1] is applicable. That rule requires "actual malice" consisting of knowledge the statements made are false, or the making of the statements with reckless disregard as to whether they are false or not. This standard was made the law of the case by instructions numbered two and five the trial court gave to the jury.

Testimony at trial and as abstracted in the appeal briefs show areas of both agreement and disagreement. Although material to the trial, much of the trial testimony is not material to the issues of the appeal.

Henslee argues (1) admission of hearsay evidence; (2) exclusion of admissible evidence; (3) failure to grant summary judgment; and (4) insufficiency of the evidence to support the jury verdict.

Henslee reaches the hearsay issue through a pre-trial "motion in limine" that was overruled and by objections to testimony at trial. At times, the record is confusing as to the making of the objections and which party elicited the hearsay. Here, we seek a more general approach to the hearsay problems in this opinion than individual or separate incidents occurring at trial.

The hearsay problem centers around the trial court allowing (a) police officers to testify as to what they told Monks that other involved parties had told them, and (b) Monks to testify as to what particular sources had told her in the course of her investigation. Testimony evolved at trial as to what Monks was told by particular police officers relating to the agreement or "fix" between Henslee and the ranchers, and as to what Monks was told by authoritative sources concerning the hiring of illegal aliens constituting a felony. As this type of testimony came to the jury, the trial court usually advised them the admission was not to establish the truth of the fact contained in the testimony, but the source of the information used by Monks in preparing her newscast.

█ Elemental in the best of hearsay definitions is the factor of offering out-of-court statements to show the truth of matters therein asserted. *Smith v. Munger,* Okl.App., 532 P.2d 1202, 1207, (1974).[2] Here, the trial court's admission of out-of-court statements as to a "fix," or if the hiring was a felony, was not to establish the truth of those asserted facts. The testimony was relevant on the issue of Monks acting so as to commit actual malice under the New York rule and the definition of actual malice as "reckless disregard." Here, the complained of testimony was not hearsay and was admissible into evidence.

█ Henslee's brief complains of the introduction of two newspaper articles as hearsay. A witness testified of writing a letter to the newspaper that was critical of the police department and the police chief. That witness refused to state the letter was written as the result of hearing the Monks newscast, but rather written in response to newspaper articles. At cross-examination of this witness, Monks and the television station sought introduction of the newspaper articles causing her to author the letter. Trial court advised the jury the admitting of the articles was for the limited purpose of showing what the witness said precipitated her to write the letter. These newspaper articles were not admitted to show the truth of matters contained in them. This was not hearsay evidence. *Smith, supra.* The jury was advised of the limited purpose for which the articles were introduced. Trial court did not commit a reversible error.

---

1. *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964).

2. Opinion reads in part at p. 1207:
   "Hearsay is variously defined and it is acknowledged that all the definitions are subject to some criticism because of the complexity of the subject and the necessity to make any definition brief and understanda-ble. Elemental in the best of the definitions is that hearsay is evidence of an out-of-court statement being offered to show the truth of matters asserted therein, 'resting for its value upon the credibility of the out-of-court asserter.' *Shinn v. Francis,* Okl., 404 P.2d 1017 (1965). McCormick on Evidence 584 et seq. (2d ed. 1972)."

■ With the pretrial "motion in limine," Henslee sought to limit Monks from testifying as to conversations she had that occurred in her investigation unless the other party to the conversation was available at trial. This restriction was refused by the trial court. Argument appears to be made that, without the other person testifying as to the conversation, it could not be used for a "good faith" showing on the part of Monks, for she could imagine the conversation to her advantage, as charged by Henslee. We have difficulty seeing this as an appeal issue. Rather, it poses a trial problem for Henslee. If he sought to disprove the conversation by the other party, it was his responsibility to produce that party as a witness and that testimony. The weight to be given that kind of testimony from Monks was for the jury. We find no reversible error bottomed on this argument.

■ Arising from the last argument, Henslee complains of the trial court excluding the testimony of his rebuttal witness. When Monks was called as a witness for Henslee and, on direct examination, she told of telephone conversations with an immigration official in Dallas concerning the hiring of illegal aliens as a felony. Later, as a witness in her own defense and on cross-examination, she testified similarly. On rebuttal, Henslee sought to establish through a newspaper reporter a like telephone conversation with the same official with the official giving a different opinion. On objection, the trial court refused the admission of last referred to conversation.

We find no reversible error in the trial court refusing the admission of the rebuttal witness's telephone conversation. That conversation of the official with a different person at a different time is not material to disprove the contents of his conversation with Monks. We observe that the Monks telephone conversation was in evidence under questioning by Henslee, both on direct as a Henslee called witness and on cross-examination as a witness on her own behalf.[3]

Argument on failure of the trial court to sustain Henslee's motion for summary judgment evolves more around alleged prejudice to Henslee, said to result from that ruling, rather than the correctness of the trial court's holding. Henslee says that if the motion was sustained then at the beginning of the trial, the jury could have been advised that hiring illegal aliens, without the additional element of harboring, was not a felony. Prior to submission of the case to the jury, the trial court did just that by Instruction No. 3. It reads in part:

"The law of the land at all times applicable to this case provided as follows:

The harboring (concealing or shielding from detection) by any person in any place, including any building or means of transportation, of an alien not lawfully entitled to enter or reside in this nation, is a felony punishable by fine, or imprisonment, or both. However, employment, and related normal practices thereof, do not constitute harboring. * * *."

With that instruction, we find no prejudice to Henslee.

■ At most, the motion for summary judgment went only to the one law issue of whether hiring illegal aliens was a felony. The sustaining of the motion would not have been decisive of the case, for there were many controverted fact issues to be resolved. Through Instruction No. 3, Henslee received the same ruling on that law issue. That law ruling was properly communicated to the jury through the instruction.[4]

We find no prejudice to Henslee stemming from the failure to sustain the motion

3. Monks called as a witness by the opposing party is deemed a hostile witness and her examination is considered as cross-examination. 12 O.S.1971, Section 383. See *Montgomery v. Nance*, Okl., 425 P.2d 470, 472 (1967). There a cross-examiner was not allowed to resort to testimony of other witness to disprove a collateral issue.

4. *Midland Valley R. Co. v. Pettie*, 196 Okl. 53, 162 P.2d 543 (1945), in syllabus by the court, said:

"Instructions are directions in reference to the law of the case, guiding the jury in arriving at correct and right conclusions. * *."

for summary judgment, here. If error occurred, it was harmless under these circumstances.

The trial testimony developed the investigation made by Monks. She interviewed police officers, the police chief, and other individuals involved. This included those called "ranchers" by her in the newscast. She sought authoritative sources as to the illegality of particular acts. Monks agreed that she failed to understand the legal significance between "hiring illegal aliens" and "harboring illegal aliens for the purpose of hiring." None of these sources made a distinct point of the significance to her. A news director for another television station gave an opinion that Monks had exercised a high standard of professional journalism quality in the preparing and airing of the story.

The record shows agreements and conflicts in the testimony of witness. The resolving of those conflicts and the weight to be given particular testimony is for the jury. In *Wat Henry Pontiac v. Pitcock*, Okl., 301 P.2d 203 (1956), this court's syllabus states:

"In a law action the verdict of the jury is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this court will not disturb its verdict and judgment based thereon."

Here, there is competent evidence reasonably tending to support the verdict of the jury rendered for the television station and its reporter. The jury's verdict and judgment based thereon will not be disturbed.

5. We, the jury, duly empaneled and sworn to try the above entitled case, upon our oaths find:

    The plaintiff has not proved defamatory falsehoods made with "actual malice" by clear and convincing evidence, and our judgment is in favor of defendants against the plaintiff.

6. Instruction No. 2 provides in part:

    "The burden of proof is on plaintiff to show by clear and convincing evidence that defamatory falsehoods were telecast or published about him with actual malice, and such caused him injury and damage. * * *

The returned verdict[5] shows failure of the plaintiff in his burden of proof under Instruction No. 2[6] caused the unfavorable judgment. There were no objections to the form of the verdict or to the instruction.

Affirmed.

All of the Justices concur.

"By 'actual malice' is not meant that either defendant bore him hatred or ill-will, but that defamatory falsehoods were telecast about him either with actual knowledge of their falsity, or with reckless disregard as to whether or not they were false.

"'Reckless disregard' means an awareness of the probable falsity of defamatory statements, or serious doubt as to the truthfulness of statements, in spite of which awareness or doubt the defamatory falsehood is published or telecast."